ALANSON DUDLEY, Appellee,

*vs.*

VALENTINE BECK and others, Appellants.

APPEAL IN EQUITY FROM THE ROCK COUNTY CIRCUIT COURT.

Sec. 7, of chap. 172, of the Session laws of 1851, which provides for the examination of the complainant to prove usury, applies only to cases in which the defence of usury is set up as a defence by *plea*, the truth of which shall be verified by affidavit.

The defence of usury may be set up either by way of plea or answer, and if in the latter mode, after answer filed, the defendant may propound interrogatories to the complainant in the usual manner. .

The defendant, in a suit of foreclosure in chancery, set up a defence of usury by way of plea, and gave notice to the complainant's solicitor requiring the complainant to appear as a witness to prove the defence, the complainant being a non-resident of the State, his solicitor entered a rule or order with the clerk for the issuing of a commission to examine him on interrogatories; the defendant joined in the commission, and filed interrogatories: *held* that the defendant could not object to the deposition taken under such commission, on the ground of irregularity in the issuing of it.

An attorney, solicitor or counsellor cannot be compelled to disclose, at the instance of a third person, any matters which came to his knowledge in consequence of his employment as such, even though] such business has no reference to legal proceedings begun or apprehended.

Where the attorney and client both engage in committing a wrongful act, the client cannot prevent a disclosure of the transaction by the attorney, on the ground that the latter became acquainted with the facts connected with it as his legal adviser. .

In a foreclosure suit, where the defence was usury and the solicitor of the complainant was called upon to prove the defence, and the following question was propounded to him, "Was not the nature of your arrangement with the complainant this?—Were you not to charge every person for whom you obtained a loan from the complainant a certain per cent., which per cent. was to be over and above the twelve per cent. mentioned in the mortgage and note given to secure the loan, the greater part of which was to go to the complainant and only a small portion was to go to you for searching the records and making out the papers; and was not this loan made under such an arrangement?" *Held*—that the witness was not excused from answering the question on the ground of the relation of client and solicitor.

This was a bill of foreclosure filed in the Circuit Court of Rock county, August 3, 1852, of a mortgage on certain lands in Rock county, made by Beck and wife to one Chas. H. Dudley, on the 20th Aug. 1851, to secure the payment of a promissory note of the same date for $110, with twelve per cent. interest per annum, within nine months after the date thereof; which mortgage was duly assigned to the complainant.

The bill is in the usual form, and after alleging the execution and delivery of the mortgage, it charged as follows: that the mortgage had been assigned to, and was held and owned by the complainant. It contained a prayer that the defendants might answer without oath, their answer on oath being waived; also for the usual decree for the sale of the mortgaged premises, and for the payment of the amount due the complainant for principal and interest and costs of suit; and also the sum of twenty-five dollars, so stipulated to be paid, as additional solicitors fees. Concluding with a prayer for process and general relief.

The defendant Beck filed his answer Sep. 16, 1852, admitting the execution of the note and mortgage mentioned in the bill, together with the sum so stipulated to be paid as solicitor's fees, and then further alleges as follows:

"That the said mortgage and the said promissory note were given for the loan and forbearance of the sum of ninety eight dollars, from the said twentieth day of August, eighteen hundred and fifty-one, for the period of time herein before mentioned, to-wit: for a period of time not exceeding nine months from the said 20th day of August, 1851, and not for the

loan and forbearance of any other or greater sum, or for any other or longer period of time;"

"That by or upon the said mortgage and the said note, there is reserved and secured, and agreed to be reserved and taken, a greater sum or value for the the loan or forbearance of the said sum of ninety eight dollars, than after the rate of twelve dollars upon the sum of one hundred dollars, for one year, during the time therein agreed upon and provided, contrary to the provisions of an act entitled, "An act to limit the rate of interest," approved, March 10th, 1851. And this defendant insists upon the said statute, and claims the same benefit as if he had pleaded the same. And this defendant claims the same benefit and advantage of exception to the said complainant's bill under this his answer thereto, as if he had pleaded or demurred to the said bill of complaint;"

"That the said note and mortgage are each of them utterly void, and that the said complainant is not entitled to any decree of this Court, upon said note and mortgage, or upon either of them, for the reason that by and upon them and each of them there is reserved and secured, and agreed to be reserved and taken, for the loan and forbearance of the sum, for the loan and forbearance of which, the said note and mortgage was given, a greater sum or value, than after the rate of twelve dollars on one hundred dollars, for one year, during the time in the said mortgage agreed upon."

On the 21st day of October, 1852, the solicitor of the defendant served the solicitor of the complainant with a notice that upon the hearing, the complainant would "be called as a witness on the part of said defendant." On the 5th of November the solicitors of

June Term 1854.

Dudley vs. Beck et al.

the complainant filed an affidavit stating that issue had been joined in the cause; that the complainant was not a resident of this State, but resided in Cattaraugus County, in the State of New York, and that notice had been served requiring said complainant, as a witness on the trial of the cause, and on the same day was filed what purports to be an order, but not signed by judge or commissioner, for the issuing of a commission for the examination of the said complainant, directed to Anson Gibbs, of the town of Elliotville, Cattaraugus County, State of New York, upon interrogatories to be annexed to said commission; and on the same day notice was served upon the solicitor of the defendant, that such order had been duly entered with the clerk, and requiring him to file interrogatories in this cause, to be annexed to the commission within ten days.

On the 15th of November the solicitor of the defendant filed his interrogatories to be annexed to said commission with the clerk, and also served upon the solicitor of complainant, a notice of the filing of the interrogatories, and protested against the irregularity of the proceedings touching the issue of the said commission.

On the 16th day of Nov. a commission in the usual form was issued for the examination of the said complainant, to which were annexed a copy of the interrogatories filed by the defendant, and the instructions, copies, &c., as required by the rules of the said Circuit Court, which commission was executed on the 23d day of December, more than three months from the filing of the replication.

At the hearing, after the complainant had closed his proofs, the defendant called for the complainant

to appear and be sworn as a witness on behalf of said defendant; thereupon the complainant's solicitor produced the deposition of said complainant taken under the commission aforesaid. The defendant objected to the said deposition on the ground of irregularity, and, as the said complainant had not appeared to be sworn as a witness, he, the defendant offered himself, to prove the usury set up in the answer, according to the statute in such case made and provided. But the court rejected such offer on the ground that the defendant had not *pleaded* the defence of usury, and verified the truth of said plea by affidavit, and on the further ground that the notice dated Oct. 21, 1852, was insufficient.

The defendant then called other witnesses to prove the usury, among whom was John M. Case, who testified that he knew the parties in the suit; that he made out the mortgage, signed the same as a subscribing witness, and was present when the mortgage was excuted; that he presumed Beck paid him for making the papers; and after further testifying in regard to the subject matter of the suit, the following questions were put to him, which were objected to by the complainant, and each replied to by the witness as follows: "I was employed by the complainant in the capacity of attorney and counsel, and know nothing in relation to the matter, except that knowledge which I derived by virtue of the relation existing between Mr. Dudley and myself as attorney and client, I being his attorney in relation to those matters; I being an attorney at law, for which reasons I decline answering."

1. "Did you ever make out the papers for Mr. Dudley when you had negotiated a loan for any per-

son from him, without charging a certain per cent.

over and above the price you ordinarily charged for searching the records and making out the papers ?

2. " Have you ever obtained a loan for any person from Charles H. Dudley, in which you have made out the note and mortgage given to secure the loan, without charging a certain per cent. on the amount loaned, over and above the ordinary charges for making out the papers and searching the records ?

3. " Who paid you in all cases for negotiating loans for Mr. Dudley, and for making out the papers and searching the records, Mr. Dudley or the person making the loan ?

4. " Were you not employed and paid in every instance by the person who obtained the loan from Mr. Dudley, through you ?

5. " How were you paid ?

6. " Has Mr. Dudley ever paid you anything for obtaining loans for other persons from him, and for making out the papers and searching the records ?

7. " Was not this the nature of your arrangement with Mr. Dudley ? Were you not to charge every person for whom you obtained a loan from Mr. Dudley, a certain per cent., which per cent. was to be over and above the twelve per cent. mentioned in the mortgage and note given to secure the loan, the greater part of which was to go to Mr. Dudley, and only a small portion was to go to you for searching the records and making out the papers ?

8. " Was not this loan made under such an arrangement as that mentioned in the last interrogatory ? "

The ground of the objection on the part of the complainant was, that they related to matters growing out of the relation of attorney and client hereto-

fore existing between him and the witness, involving confidential communications which were privileged ; and the complainant continuing to insist upon said objection, the court held them severally incompetent, and the witness was not permitted further to answer.

The court rendered a decree for $131,81, being the amount of the note and interest, and twenty-five dollars as solicitors fees, in addition to the fees or costs allowed by law. The points which were raised and discussed on the argument of the case, and decided by the court, will be found noticed in the opinion.

*Ely & Bennett*, for appellant.

*Sleeper & Carpenter*, for appellees.

*By the Court*, Whiton, C. J. We are of opinion that the circuit judge decided correctly in rejecting the testimony of the defendant Beck, when he offered himself as a witness. The session laws of 1851, chapter 172, sec. 7, provide that "whenever in an action at law or suit in equity, the defendant shall plead the defence of usury, and shall verify the truth of his plea by affidavit, he may, for the purpose of proving the usury, call and examine the plaintiff or complainant as a witness, in the same manner as parties by law can now be made witnesses, and if the plaintiff or complainant shall fail to present himself as a witness, on due notice to him or his attorney, or give his deposition, the defendant shall be a competent witness to prove the usury." In this case the defence of usury was not *pleaded*, and of course there was no *plea* to verify by affidavit, as the statute prescribes, but the defence of usury was set

up in the answer of the defendant. It is true that this defence may be set up in either of these modes, but it appears that the legislature have, in the statute under consideration, limited the right of the defendant to call on the plaintiff or complainant, to cases where that defence is set up in a plea. A consideration of our statutes in force when the act of 1851 was passed shows that this provision gives no rights to the defendant which he did not have before, except in the single case of a plea interposed to a bill in equity. The Revised Statutes (*chap.* 98, *sec.* 57) provide that in all actions and proceedings at law either party may be a witness in his own behalf, if the adverse party shall not appear and testify or produce his deposition, upon due notice. This, it will be seen, is a more comprehensive provision in relation to suits at law, than the one under consideration, as this is limited to proof of the alleged usury. The statutes likewise provide (*chap.* 84, *sec.* 30) that " the defendant in chancery, after he shall have filed his answer, may exhibit interrogatories to the complainant which shall be answered by him upon oath ; and if the complainant shall not answer such interrogatories within the time appointed by the court, he shall be in contempt, and his bill shall be dismissed with costs." It will hardly be contended that the complainant could be compelled to answer interrogatories unless an *answer* to the bill of complaint had been filed by the defendant ; putting in a plea would not entitle the defendant to this right.

It will be seen that the only benefit which the defendant can derive from the provision of the act of 1851 under consideration, is in the single case of a plea setting up the defence of usury, in a suit in equity.

# 282

There is, therefore, no hardship to a defendant, in giving to the terms *plead* and *plea*, as they are used in the act, their ordinary signification. We must suppose that the legislature intended to give the defendant the right to call upon the complainant to testify only in cases where the right did not exist before, and these, as we have seen, are only cases where the usury is set up in a plea.

In a suit at law without this statute the defendant could call upon the plaintiff to testify in all cases, without verifying his plea by his affidavit; and in suits in equity, he could, after he had filed his *answer*, call upon the complainant to answer any pertinent interrogatories on oath. The only case where the defendant did not possess this right to compel his adversary to testify, was in the case of a *plea* to a bill in equity, and we are disposed to construe the provision of the statute under consideration, so as to give it some effect.

It is true, that in a general sense the pleadings in a suit comprehend all the altercations of the parties up to the formation of the issue between them, whatever may be their form ; but we do not think that the legislature have in the act before us, used the terms plea and plead in any such sense.

But admitting that the statute gives the right to the defendant to call upon the complainant as a witness to prove the usury, still we think that the defendant was properly rejected when he offered himself as a witness, on the ground that the deposition of the plaintiff which was taken in the case and offered in evidence could not be objected to by the defendant. Under the statute the plaintiff was his witness, and although the commission to take the deposition was

not issued in pursuance of the rule, still the defendant should not be allowed, after he had joined in the commission and had put interrogatories to the witness, to say that the commission was irregularly issued. The issuing of the commission was the means of procuring testimony which he desired, and by his participation in the act of taking the testimony, he must be held to have waived any irregularity which may have existed. It is true that when he filed the interrogatories to be put to the complainant, he protested against the irregularity of the proceedings touching the issuing of the commission ; but we do not think that this can so qualify the act of joining in the commission, as to destroy its effect. He might as well protest against the irregularity of the service upon him of a writ of summons, while pleading to the declaration filed in the case.

But the next important question presented for our consideration, is in relation to the privilege claimed by the witness Case, on the ground that he derived the knowledge which was sought to be obtained from him, by means of his relation as solicitor to the mortgagee. The Circuit Judge refused to compel him to answer, and the question presented is, whether this decision is correct. It will be borne in mind that the principal, if not the sole ground of defence set up in the answer, is usury, and that it was for the purpose of establishing this defence by testimony, that the questions were put to witness.

The importance of protecting those who have occasion to seek legal advice from the consequences of a disclosure of the facts which they communicate to their counsel, will not be denied by any one acquainted with legal proceedings. In giving judgment in

the case of *Greenough vs. Gaskill*, 1 *Mylne & Keene*, 98, the Chancellor (Brougham) says, "If the privilege did not exist at all, every one would be thrown upon his own legal resourcess; deprived of all professional assistance, a man would not venture to consult any skillful person, or would only dare to tell his counsellor half his case. If the privilege were confined to communications connected with suits begun, or intended, or expected, or apprehended, no one could safely adopt such precautions as might eventually render any proceedings successful, or all proceedings superfluous." We think the cases in this country and in England, taken together, establish the doctrine that an attorney cannot be compelled to disclose, at the instance of a third person, any matter which came to his knowledge, in consequence of his employment, even though such business had no reference to legal proceedings begun, or apprehended. *Foster vs. Hall*, 12 *Pick. R.* 89 ; *Hutton vs. Robinson*, 14 *ib.* 416 ; *Greenough vs. Gaskell*, 1 *Mylne & Keene*, 98 ; *Beard vs. Ackerman.* 5 *Esp.* 119 ; *Cromack vs. Heathcote*, 2 *Bro. & Bingh. R.* 4 ; *Doe vs. Harris*, 5 *Car. & Payne*, 592 ; *Bank of Utica vs. Mossereau*, 3 *Barb. Ch. R.* 529.

It was contended by the counsel for the appellant, that when the client disclosed to the attorney an intention to commit a fraud, and sought the aid of the attorney to enable him to accomplish his purpose, the communication would not be privileged. This is contrary to the doctrine laid down in Cromack *vs.* Heathcote, and Bank of Utica *vs.* Mossereau above cited. It appears also to be opposed to the dictum of Bronson, judge, in the case of Coveny *vs.* Tannehill, 1 *Hill. R.* 33. But we do not think it necessary to decide

this question, as some of the interrogatories propound-
ed to the witness went much further. Two of the
questions asked the witness were as follows : "Was
not this the nature of your arrangement with Mr.
Dudley—were you not to charge every person for
whom you obtained a loan from Mr. Dudley, a certain
*per cent.*, which per cent. was to be over the twelve
per cent. mentioned in the mortgage and note given
to secure the loan, the greater part of which was to
go to Mr. Dudley, and only a small portion to you
for searching the records and making out the papers ?"
" Was not this loan made under such an arrangement
as that mentioned in the last interrogatory?" Each
of these questions, the witness declined to answer, for
the reason that he was the attorney of Dudley in re-
lation to the loaning of the money, and in regard to
the security to be taken for the money. The witness
being an attorney at law, and deriving his knowledge
of the transaction by means of his employment, and
the counsel of the complainant objecting to any dis-
closure by the witness. The Circut judge decided
that the witness should not be compelled to answer
the questions, and signed a decree for the amount due
according to the note and mortgage.

We think the judge erred in the decision of the
question. The facts sought to be proved were not
of such a nature as to prevent their disclosure by the
witness. If the mortgagee (Dudley) made an agree-
ment like that mentioned in the interrogatory, it
cannot with any propriety be claimed that it was the
result of the employment of Mr. Case as his attorney.
Nor can it be contended that the acts of Mr. Case
which were sought to be proved, resulted from such
employment. It is true that the witness stated such

June Term 1854.

Dudley vs. Beck et al.

to be the fact, but this is a question for the court and not for the witness. *Coveny vs. Tannehill above cited.* If Dudley, the mortgagee, had advised with the witness as to the method by which he " could obtain more than the maximum allowed by statute for the use of his money, and at the same time avoid the penalty which the statute imposes, and the witness had given him advice upon that subject, as an attorney, the communication would perhaps be privileged. But the question under consideration is quite different. If the witness obtained the loan for the defendant from Dudley, the mortgagee, in pursuance of the agreement mentioned in the interrogatory, he pretended to act as the attorney of the former, while the principal part of the money which the defendant paid him for his services, went to the mortgagee. It was an act done by the attorney and client in pursuance of an agreement entered into between them, and not a communication from the latter to the former.

When the attorney and client both engage in committing a wrongful act, the client cannot prevent a disclosure of the transactions by the attorney, on the ground that the latter became acquainted with the facts connected with it, as his legal adviser.

(See the remarks of the Chancellor in the case of *Greenough vs. Gaskill,* 1 *Mylne, and Keene* 98, and of *Bronson J. in the case of Caveny vs. Tannehill,* 1 *Hill, R.* 33. *Hutton vs. Robinson,* 14 *Pick. R.* 416.)

It seems to be an abuse of terms to call such conduct a privileged communication from a client to his attorney. The decree must therefore be reversed.