Burnside *vs.* Terry *et al.*

JAMES W. BURNSIDE, plaintiff in error, *vs.* BIRD TERRY *et al.*, defendants in error.

1. B held judgments against F. for $3,000 00, obtained before 1868. In 1869, F. had a homestead assigned in certain lots of land. It does not appear that there were any minor children. Before the homestead was finally approved by the ordinary, F. signed a deed, regularly attested, conveying one of the lots of land contained in the homestead to B. The wife of F. also signed the deed, but her signature was attested only by one witness. The deed recited the fact that B. held the judgments for $3,000 00; that the homestead had been taken by F.; that B. had made no objections on an agreement that the lot should be conveyed to him in full satisfaction of the judgments, provided they were not paid:

   *Held*, that as no title was vested in the beneficiaries of the homestead as against the judgments held by B., and as no fraud is charged in the transaction, the title conveyed by F. to B. is good against the claimant under the homestead.

2. Where clients authorize their attorney at law to make a certain contract with a party, which is done, and the contract is carried out according to the agreement, such authority thus given is not a confidential communication by the clients, and the attorney is a competent witness to prove the contract.

Deed. Homestead. Evidence. Attorney and client. Confidential communications. Before Judge BUCHANAN. Hall Superior Court. June Adjourned Term, 1873.

James W. Burnside brought complaint against Bird Terry, Bowling W. Field and his wife, Levada Field, for lot of land number forty in the tenth district of the county of Hall. The defendants pleaded the general issue, and also that the title to said land was in Field and his wife.

Plaintiff relied on a deed made by Field and his wife, two of the defendants, (the other defendant, Terry, being merely a tenant,) said deed dated April 30, 1869, and an order from Field to Terry, the defendant, dated December 19, 1870, to deliver possession of the land to plaintiff.

Defendants relied on a judgment of the court of ordinary of Lumpkin county, setting apart the land as a homestead. The homestead lies part in Lumpkin and part in Hall coun-

ties. There were objections filed as to the appraisement and survey of each, and separate appraisers appointed for each county. On the 24th of April, 1869, the return of the appraisers from both counties being in, the ordinary passed an order directing some three or four lots to be stricken from the plat, so as to bring the valuation within the amount allowed by law, directing the county surveyor to make a resurvey and a new plat accordingly, and that the homestead, as thus altered, be approved. A plat and survey were made in accordance with this order, and were sworn to by the surveyor on the 26th of April, 1869. There is confusion in the record as to the date when this corrected plat was filed and approved. A memorandum, not signed by any one, states that it was approved April 24th. This seems a mistake, as the surveyor did not swear to it until two days afterwards. It was not recorded by the clerk of the superior court until May 12, 1869. The same surveyor, B. F. Sitton, is a witness to the deed under which plaintiff claims, and he swears that the defendants signed the deed at the time he went to lay off the homestead, (after telling him all about the compromise, as expressed in the deed,) and that this was before the homestead was granted. The consideration expressed in the deed was, that the grantee, Burnside, held judgments which were a lien on all the property of Field and wife, to the amount of $3,000 00; that Burnside made no objections to the homestead, which comprised divers other lots, this one (number forty,) being one of them, upon the following contract and agreement: "That if the said Bowling W. Field does not pay, or cause to be paid fully off said sum of money due on said *fi. fas.* on or before the 1st day of January, 1871, then the lot or fraction of land number forty in the tenth district of Hall county, Georgia, known as the Field's fraction, on the Chestatee river, valued at the sum of $1,000 00, is the right and property of the said James W. Burnside, his heirs and assigns forever, in fee simple; and said judgments and *fi. fas.* are to be held and considered in law and equity fully paid off and satisfied as to said Field, his heirs and representatives." The other prop-

erty in the homestead of realty, when taken with the aforesaid lot, was sufficient to run it up to the full value of $2,000, and the personalty nearly up to the $1,000 00, from all of which the lien of the judgments was to be discharged, under the contract expressed in the deed.   The application for homestead did not state that Field was the head of a family, and there were, in fact, no minor children of the applicants, or either of them.

This conveyance of the homestead property was approved by A. Burnside, the ordinary of Lumpkin county and brother of the plaintiff.   He was also the officer before whom the petition for homestead had been filed, who had heard all the questions made in it, and at the instance of Field and his wife had approved the survey as finally altered.

On the trial there was conflict in the testimony as to whether Mrs. Field voluntarily signed the deed ; but plaintiff offered the written depositions of John A. Wimpy, the attorney for Field and his wife in filing the petition and procuring the homestead set apart in Lumpkin county, to prove, amongst other things, that before the homestead was approved he, as their attorney, and with their assent and authority, made the agreement to settle with Burnside as set out in the deed.   This testimony of Wimpy was, on motion of defendants, ruled out as confidential between client and attorney.   The record of the homestead from Lumpkin did not show affirmatively that Field was the head of a family, or guardian, or trustee of a family of minor children, and plaintiff objected to its admissibility on this ground.   The objection was overruled.   The plaintiff made in writing various requests to charge, the substance of which was that the $3,000 00 and upwards of judgment liens being antecedent to 1868, if the parties *bona fide* settled and compromised those liens by the contract they had made, it was valid and binding, and the action of the ordinary immaterial.

There was no dispute as to the identity of the land, and the whole case turned on the validity of the deed the defendants had made to the plaintiff.   The court charged the

jury, in substance, that the plaintiff could not recover unless the deed or paper in question had been voluntarily made or signed by both Field and his wife, and that it must have the approval of the ordinary, and that an approval by an ordinary who was brother of the grantee was void unless the grantors had voluntarily waived the relationship. The jury found for defendants. There was a motion for a new trial, alleging error in ruling out the testimony of Wimpy, in admitting the record of the homestead, in charging as above stated, and in refusing to charge as requested. The motion was overruled and plaintiff excepted.

This case was before this court at a previous term : See 45 *Georgia Reports,* 621.

WIER BOYD; HILLYER & BROTHER, for plaintiff in error, cited Code, secs. 3854, 3855, 3798; 45 Ga. R., 621; 43 *Ibid.,* 318; 41 *Ibid.,* 622; Code, secs. 2002, 2025, 2032, 3589, 3594; 40 Ga. R., 173; 35 *Ibid.,* 173; 12 *Ibid.,* 52; 30 *Ibid.,* 630.

JASPER N. DORSEY, for defendants, cited Code, secs. 2690, 2706, 2025, 1783; 45 Ga. R., 621.

TRIPPE, Judge.

1. Burnside had obtained judgments to the amount of $3,000 00 against Field, before 1868. Field, on his own application, in 1869, had a homestead set apart for himself as the head of a family, consisting of himself and wife. The application is in his own name, and the proceedings in the homestead case show nothing about a family, or that Field was the head of a family. The evidence in the ejectment case proves that he had a wife. A few days after the homestead was assigned, Field executed a deed to Burnside to a part of the land contained in the homestead, worth $1,000 00, in satisfaction of Burnside's judgments. This was done under a previous agreement between the parties. Mrs. Field joined her husband in the deed, but there was only one witness who attested her signature, and the ordinary who approved the

deed was the brother of the grantee. Burnside claimed title under this deed. This case was before this court at July term, 1872: See 45 *Georgia*, 621. It was there held that the deed to Burnside was a deed conveying the land on a condition subsequent, and not a mortgage. The deed is set out in full in the report of that case. This point is no longer open. It was also then held that the ordinary who approved the deed of the husband and wife, being the brother of the grantee, the deed was invalid. It was also said that if the sale was for the extinguishment of the husband's debts, it was not a legal sale. But all this was on the assumption, as was then held to be the law, that the homestead was not liable to the judgments of Burnside against the husband, and WARNER, chief justice, who pronounced the opinion of the court, says: "If the homestead is to be held good as against the pre-existing debts of the husband, the ordinary should not have approved the sale of the land for that purpose." Since that time it has been finally settled that the homestead is not good against such debts, and that the homestead act, to that extent, is unconstitutional and void. This being so, the *voluntary conveyance* by the husband, through the medium of the ordinary, and in the form of a homestead of this land, for the benefit of himself and wife, or as the homestead proceedings show, to himself, as a homestead, was void. Section 1952, Code, declares that every voluntary deed or conveyance not for a valuable consideration, made by a debtor insolvent at the time of such conveyance, shall be *fraudulent in law* against creditors, *and as to them null and void*. Section 2662 says, an insolvent person cannot make a valid gift to the injury of his existing creditors. Section 2631 enacts that every sale made with intent to defraud either creditors of the vendor or prior or subsequent purchasers, if such intention be known to the vendee, should be absolutely void as against such creditors or purchasers. If these deeds or conveyances thus declared void, absolutely null and void as against creditors, are so when made by the debtor directly, they are equally so if he join with him in their execution a trustee (section 1952,)

Burnside *vs.* Terry *et al.*

or if he procure the ordinary to make a record of it in the form of an application for a homestead. There was then no title vested in Fields and his wife, the beneficiaries under the homestead, as against Burnside, the judgment creditor, and as no fraud is charged in the transaction against the creditor, the title conveyed by Field is good against him or his wife as claimants of the homestead.

2. Had the testimony of John A. Wimpy, Esq., been admitted it would have shown that Field and wife, before the homestead was set apart, had agreed with Burnside that this lot should be conveyed to him, that they had in advance contracted with the creditor that if no objections were filed to the application for the homestead he should have the lot and a deed would be made to him and that this was done through their attorney, the said Wimpy, and by their authority. If the fact of Mr. Wimpy's having this authority was communicated by him to Burnside, and Burnside, through him, made the contract and acted on it, and it was accordingly carried out, it could not be that the giving such authority was such a communication by client to attorney that it is protected by law against being proven by the attorney. If a party hold out his attorney as one having authority from him to make a special contract respecting pending litigation and the attorney acts upon it, treats with his antagonist and thereby secures important rights to the client, he cannot deny the right of the attorney or of the opposite party to prove by the attorney the contract and the authority to make it. It is as if the attorney was constituted a special agent for that purpose. We would not trench upon the sacredness of confidential communications of client to attorney, but that is not intended to be confidential or sacredly secret which the attorney is to propose to the other party as a foundation for bargains and contracts for the benefit of the client when these proposals are accepted and acted on and the benefits secured. If this be the state of the case as to Mr. Wimpy's testimony, it should have been admitted.

Judgment reversed.