Koeber vs. Somers.

---

KOEBER, Respondent, vs. SOMERS, Appellant.

*December 8, 1900 — January 8, 1901.*

*Leases: Implied covenants: Attorney and client: Privileged communications.*

| 108 | 497 |
|-----|-----|
| 108 | 625 |
| 108 | 497 |
| 113 | [1]603 |
| 108 | 497 |
| e114 | [2]393 |

1. Under secs. 2204, 2242, Stats. 1898, there are no implied covenants in a lease for a term exceeding three years. A statement to the contrary in *Shaft v. Carey*, 107 Wis. 273, not necessary to the decision of that case, is withdrawn.

2. An attorney who has received from his client authority as an agent to enter into a contract with a third person and has acted thereon may testify to the giving of such authority if it comes in question. Sec. 4076, Stats. 1898, has no application to such a case.

3. A party is not protected by any privilege from testifying as to whether he received from his attorneys moneys paid to them by the adverse party in accordance with a settlement of the demand in suit made by said attorneys with such adverse party.

APPEAL from a judgment of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Reversed.*

On August 25, 1893, defendant leased to plaintiff for five years, at the rate of $83.33 per month, " the certain two-story frame building known and numbered 264 West Water street, and the real estate upon which the same is situated." The building was a somewhat dilapidated frame building of ad-

Koeber vs. Somers.

vanced age, consisting of a store and an imperfect second
story, twenty feet front. At the time of the leasing an equally
dilapidated frame building belonging to one Lange stood
about six feet south of the leased building, and between the
two was an old stairway, used in common to reach the sec--
ond floor of both buildings. These steps were supported on
one side by cleats nailed to the leased building and on the
other by uprights a foot or two from Lange's building. At
the top was a platform extending from building to building,
and giving access to both. In May, 1895, Lange proceeded
to tear down his building, and to excavate for the erection
of a new one up to his line, which was about one foot south
of the leased building, thus necessitating the removal of the
stairs. Thereafter plaintiff continued to occupy the ground
floor as a store, making no use of the second story, and paid
his rent without objection or protest up to the end of the
lease. He brings this suit alleging the removal of the stairs
by other parties, his resulting deprivation of the use of the
upper story, and damage in the sum of $1,000. The jury
allowed him $8.33 per month for the remainder of his lease-
hold term,— $333.20.

It appeared that plaintiff, in January, 1896, caused suit
to be commenced by his then attorneys, Felker, Goldberg
& Felker, against this defendant, for damages resulting from
the partial eviction, predicated upon breach of an implied
covenant for quiet enjoyment. Defendant offered in evi-
dence a written acknowledgment from Felker, Goldberg &
Felker of settlement of said action for the sum of $25, paid
December 10, 1896. In order to qualify it for admission,
defendant offered Mr. Felker as a witness, and having by
him established the fact that he was attorney, and that the
written agreement was made and delivered, and the amount
therein specified paid, asked him whether or not plaintiff
authorized the making of that settlement. He replied that
he could not give that information except as the result of

communications between plaintiff and himself in the capacity of client and attorney, and submitted to the court whether he should state it.   The question being objected to by plaintiff, the court ruled that it called for privileged communications, and sustained the objection.   Plaintiff was asked if he received the $25 so paid Felker, Goldberg & Felker, or any part of it, and objection thereto was sustained.   The evidence was conflicting as to whether plaintiff consented to the removal of the stairs.

Upon the verdict, judgment was rendered for plaintiff, from which defendant appeals.

*Jared Thompson, Jr.*, for the appellant, to the point that the questions asked of plaintiff's former attorneys with reference to their authority to settle the former action were not within the privilege secured by the common law and the statute, especially after the execution of the written settlement, cited *Thayer v. McEwen*, 4 Ill. App. 416, 418, 419; *Snow v. Gould*, 74 Me. 540, 43 Am. Rep. 604; *Henderson v. Terry*, 62 Tex. 281; *Burnside v. Terry*, 51 Ga. 186; *Wyland v. Griffith*, 96 Iowa, 24; *Todd v. Munson*, 53 Conn. 579; *Moffatt v. Hardin*, 22 S. C. 9; *House v. House*, 61 Mich. 69; *Ripon v. Davies*, 2 Nev. & M. 310; 19 Am. & Eng. Ency. of Law (1st ed.), 136–141; *Day v. Moore*, 13 Gray, 522; *Gower v. Emery*, 18 Me. 79; *Kelly v. Wright*, 65 Wis. 236, 238, 239; *Hanlon v. Doherty*, 109 Ind. 37; Weeks, Att'ys at Law (2d ed.), 323, 326, 338, 364; Mechem, Agency, §§ 881, 882; *Murphy v. Waterhouse*, 113 Cal. 467; *Rosseau v. Bleau*, 131 N. Y. 177.

For the respondent there was a brief by *Turner, Pease & Turner*, and oral argument by *W. J. Turner*.   They contended, *inter alia*, that plaintiff's former attorneys had no right, without his express consent, to compromise the claim for a small portion thereof.   Weeks, Att'ys at Law, 380–385, 458, 471; *Kelly v. Wright*, 65 Wis. 236; *Hooker v. Brandon*, 75 Wis. 8.   The exclusion of their testimony as to their

authority was proper. *Dudley v. Beck*, 3 Wis. 274; *Getzlaff v. Seliger*, 43 Wis. 297; *Bacon v. Frisbie*, 80 N. Y. 394.

DODGE, J.   Two interesting and important questions are presented which go to the ultimate question of liability and obviate necessity for considering other assignments of error which reach only to the correctness of the trial and procedure.   Those questions are: First, the existence of any covenant by defendant for plaintiff's quiet enjoyment of the demised premises; second, the right of defendant to prove, by testimony of plaintiff's former attorney, the giving to him of authority to make a settlement of plaintiff's demand, which he did in fact make.

1. At common law, as is elementary, from the ordinary words of grant or demise in an instrument relating to real estate were implied certain covenants; among others, that the grantor had the right to convey, and that he would protect the grantee from lawful interference by others in enjoying the demised premises.   This is called a covenant for quiet enjoyment.   *Eldred v. Leahy*, 31 Wis. 546.   Our statute, however (sec. 2204, Stats. 1898), reversed the rule of the common law, and provided that "no covenant shall be implied in any conveyance of real estate."   This would seem final but for certain decisions in New York, whence we took the words above quoted, and but for the declaration very recently made by this court in *Shaft v. Carey*, 107 Wis. 273, that: "The statute (sec. 2204, Stats. 1898) to the effect that no covenant shall be implied in any conveyance of real estate, whether such conveyance contains special covenants or not, does not apply to leasehold estates.   This is the rule now established in New York, from which our statute was taken, although a different conclusion was at first arrived at.   *New York v. Mabie*, 13 N. Y. 151."

On examining the authority there cited, we find it to relate to a lease for only three years, but to adopt the reason-

ing of Chancellor WALWORTH in *Tone v. Brace*, 11 Paige, 566, which related to a lease for five years. In those cases it was held that the term " conveyance " did not include leases for years, repudiating the reasoning of an earlier case, where it was held that a lease for five years was a " conveyance of real estate," because another statute of that state (sec. 36, ch. 3, p. 762, 1 R. S. N. Y. 1829) provided that the term "real estate" should include all interests in land except a leasehold for not exceeding three years. The subject has received no elaboration or discussion in later New York decisions. In some cases *New York v. Mabie* has been cited merely to support the proposition that implied covenants exist in leases for less than three years. *Vernam v. Smith*, 15 N. Y. 327; *Edgerton v. Page*, 20 N. Y. 281; *Boreel v. Lawton*, 90 N. Y. 293; *Vann v. Rouse*, 94 N. Y. 401. In others it is assumed that no lease for years, though exceeding three, is within the statute excluding such covenants. *Graves v. Berdan*, 26 N. Y. 498; *Mack v. Patchin*, 42 N. Y. 167; GROVER, J., in *Burr v. Stenton*, 43 N. Y. 462, 464. While in still others, including the latest utterance we have found on the subject, the statute is, without argument, assumed to exclude implied covenants from leases longer than three years. CHURCH, J., in *Burr v. Stenton, supra; Coffin v. Brooklyn*, 116 N. Y. 159.

Thus it is by no means clear that *Tone v. Brace* and *New York v. Mabie* correctly declare the law, even of New York, as to their statute. Whether they do or not, however, the views expressed in them are in direct conflict with sec. 2242 of our statutes, which clearly includes within the term " conveyance " all leases for more than three years, and has been so treated whenever referred to. *Eldred v. Leahy*, 31 Wis. 546; *Topping v. Parish*, 96 Wis. 378, 382. It provides: " The term ' conveyance,' as used in this chapter, shall be construed to embrace every instrument in writing by which any estate or interest in real estate is created, aliened, mort-

gaged or assigned or by which the title to any real estate may be affected in law or equity, except wills and leases for a term not exceeding three years." New York had no such section in the chapter containing the original of our sec. 2204 (sec. 140, ch. 1, p. 738, 1 R. S. N. Y. 1829). True, there existed a section in the same words, but in another chapter, devoted to the recording of conveyances (sec. 38, ch. 3, p. 762, 1 R. S. N. Y. 1829); but it was never referred to as affecting the interpretation of sec. 140, ch. 1. It is, therefore, apparent that decisions of New York courts are not controlling as to the scope of sec. 2204, so far, at least, as they conflict with the interpretation expressly and without ambiguity given it by the legislature in sec. 2242.

Considering our own statute, then, as an original proposition, there is no ambiguity. The words and the intent of the legislature are clear to the effect that no covenant shall be implied in any conveyance of real estate, and that a lease for more than three years is such a conveyance. This court cannot properly change or ignore that legislation. Our declaration in *Shaft v. Carey*, 107 Wis. 273, above quoted, if adhered to, would have that effect, and we hasten to avail ourselves of this early opportunity to withdraw it; the more readily because in the few months since it was uttered it cannot have become so established as a rule of property as to affect in very considerable degree vested rights; certainly not the rights of the parties now under consideration, for they had become fully settled — nay, had been tried in the superior court — before the decision of *Shaft v. Carey*. The result reached in that case did not necessarily depend on the rule of law so announced, for that was not an action to recover for breach of any implied covenant, but was a suit to enjoin one holding under and in the right of the lessor from doing acts invasive of rights granted by the lease itself. The duty of the lessor to refrain from voluntarily and unnecessarily interfering with

the possession he himself has granted stands on very different ground from his liability to respond in damages when that possession is disturbed by another under a superior title.  The rights of the lessee were not predicated upon implied covenant, nor did the briefs of counsel discuss the subject, nor did the court have its attention called to sec. 2242 as affecting sec. 2204.

We hold, therefore, that in the lease from defendant to plaintiff there was no implied covenant to defend the latter from interruption of his use of a portion of the premises by the acts of Lange upon his adjoining premises, under his superior title, and that plaintiff cannot maintain his action for damages founded upon breach of such covenant.  The refusal of instructions requested by defendant substantially to this effect was error necessitating reversal.

2. The proposition advanced by respondent and adopted by the trial court, that one, after fully authorizing his attorney, as his agent, to enter into contract with a third party, and after such authority has been executed and relied on, may effectively nullify his own and his duly authorized agent's act by closing the attorney's mouth as to the giving of such authority, is most startling.  A perilous facility of fraud and wrong, both upon the attorney and the third party, would result.  The attorney who, on his client's authority, contracts in his behalf, pledges his reputation and integrity that he binds his client.  The third party may well rely on the assurance of a reputable lawyer that he has authority in fact, though such assurance be given only by implication from the doing of the act itself. It is with gratification, therefore, that we find overwhelming weight of authority against the position assumed by the court below, both in states where the privilege protecting communications with attorneys is still regulated by the common law and in those where it is controlled by statute, as in Wisconsin.  A few of the more direct decisions are the following: *Burnside v. Terry*, 51 Ga. 186; *Rochester Bank v. Suydam*,

Koeber vs. Somers.

5 How. Pr. 254; *Bartlett v. Bunn*, 56 Hun, 507, 509; *Mulford v. Muller*, 3 Abb. Dec. 330; *Hampton v. Boylan*, 46 Hun, 151; *Rosseau v. Bleau*, 131 N. Y. 177, 183; *Nave v. Baird*, 12 Ind. 318; *Mitchell v. Bromberger*, 2 Nev. 345; *Waldo v. Beckwith*, 1 N. M. 182; *Hager v. Shindler*, 29 Cal. 63; *Jeanes v. Fridenberg*, 3 Pa. Law J. 65, 71; *Henderson v. Terry*, 62 Tex. 281; *Gower v. Emery*, 18 Me. 79; *Snow v. Gould*, 74 Me. 540; *Day v. Moore*, 13 Gray, 522; *Dudley v. Beck*, 3 Wis. 274; *DeWitt v. Perkins*, 22 Wis. 473; *C. Aultman & Co. v. Ritter*, 81 Wis. 395; Weeks, Att'ys at Law, §§ 151, 152; Greenl. Ev. §§ 245, 246.

Our statute (sec. 4076) on this subject is adopted from New York, and has been declared to be but re-enactment of the common law. *Hurlburt v. Hurlburt*, 128 N. Y. 420, 424; *State ex rel. Hardy v. Gleason*, 19 Oreg. 159, 162. It provides: "An attorney or counselor at law shall not be allowed to disclose a communication made by his client to him or his advice given thereon in the course of his professional employment."

The rule of the common law and of this statute within its proper limits is most salutary. It is essential to the ends of justice that clients should be safe in confiding to their counsel the most secret facts, and to receive advice and advocacy in the light thereof without peril of publicity. Disclosures made to this end should be as secret and inviolable as if the facts had remained in the knowledge of the client alone. *Bruley v. Garvin*, 105 Wis. 625. But there are necessary limits to the broad rule that all communications between him who is client and him who is attorney are thus privileged. One limitation bearing upon the question in hand grows out of the words of the statute itself. To be privileged, the communications to the attorney must have been in the course of his professional employment. The field of services performed by men who are attorneys at law and of the transactions between them and those whom they serve

is continually extending. Many things are done by them in other capacities than as attorneys at law. They may be constituted agents or trustees, mediums of transfer of title, or they may enter into various contracts with their clients upon the validity of which their own rights or rights of others may depend, and where such validity can be proved only by testimony of the attorney and client. A multitude of such transactions which might as well be had by the client with one not an attorney at law are held not to be within the professional employment.

One of the earliest cases recognizing this limitation is *Jeanes v. Fridenberg*, 3 Pa. Law J. 65, where the court, by SHARSWOOD, J., after speaking of certain limitations where the relation was clearly professional, said: "These are all cases in which the attorney is but a witness, but there is a class which stands upon higher and still clearer and more unequivocal ground, where the line is distinctly and broadly marked; that is, where the attorney is himself a party to the transaction or agreement which he is called upon to disclose. If the privilege were suffered to be applied to such cases, a wide door would be opened for the successful perpetration of fraud and crime. Attorneys would be selected as the agents or trustees wherever a cover of darkness would be needed, and, though but few might be found base enough to prostitute their high and honorable profession, yet the character of the whole bar would be injured and degraded by the conduct of those few." In that case the attorney was held obliged to testify to the receipt from his client of moneys in trust to pay to certain creditors. In *Rochester Bank v. Suydam*, 5 How. Pr. 254, the attorney, having indorsed commercial paper of his client and stated at the time of his indorsement that he held in his possession certain property as security, was held obliged to disclose the dealings with his client as to the transfer to him of such property, and what he had done with it, on the ground, as

stated by the court, that such communications would not
seem to have been "communicated to him with a particular
view to any legal business to be done by him either as at-
torney or counsel, but to have come to his knowledge from
time to time during employment, sometimes as attorney and
constantly as agent, and to have related as much to his
business in the latter capacity as in the former." In *Hager
v. Shindler*, 29 Cal. 63, where the attorney received a volun-
tary deed from his client in order to borrow money on the
property, and then made a voluntary deed to another at the
direction of his client, he was required to testify thereto
partly on the ground above suggested,— that the transac-
tions were extra-professional and might as well have been
with a layman as with the attorney. This is the principle
at the foundation of *Dudley v. Beck*, 3 Wis. 274, where the
inquiry was as to the agreement between the client and his
attorney as to payments of commissions, etc., as affecting
the question of usury, and the attorney was required to tes-
tify. The court said: "If the mortgagee made an agree-
ment like that mentioned in the interrogatory, it cannot,
with any propriety, be claimed that it was the result of the
employment of Mr. Case as his attorney. Nor can it be
contended that the acts of Mr. Case which were sought to
be proved resulted from such employment. . . . It was
an act done by the attorney and client in pursuance of an
agreement entered into between them, and not a communi-
cation from the latter to the former."

In the light of this principle and these holdings it would
seem that the transaction as to which Mr. Felker was in-
terrogated fell clearly outside of a proper limit of commu-
nications to the attorney *in the course of his professional
employment*. An instruction to one, though an attorney, to
perform an act as agent, is a contract. The very fact that,
as shown by authorities cited by respondent, such authority
cannot be presumed from the mere retainer as an attorney

at law, certainly tends to the conclusion that it was extra-professional; and, since it requires proof of authority, the attorney must, of necessity, be at liberty and be required to testify as to the giving of such authority. The purpose of the privilege and of the limitation thereon will be a sufficient guide to trial courts to prevent the invasion of either. Some other rules of examination of witnesses may well yield to those purposes. It is not improbable — nay, more than probable — that in the same conversation in which authority is given to the attorney to act for his client as an agent there will be disclosure of facts and circumstances and advice and counsel which should be held secret. An intelligent appreciation of the reasons involved, however, will enable courts to control the examination so that, while the proper fact of the granting of authority or of the making of a contract may be disclosed by the attorney, other communications, confidential and professional in their character, will be withheld. See *Chirac v. Reinicker*, 11 Wheat. 280, 294; *Dudley v. Beck*, 3 Wis. 284.

Another limitation upon the privilege of secrecy in communications between attorney and client arises from the fact that such privilege is personal, and may be waived either by express words or by conduct. *McMasters v. Scriven*, 85 Wis. 162, 167. By a great number of authorities, only a few of which are cited above, it has been held that no privilege of secrecy exists over communications which the attorney, for his own protection or the protection of those with whom he deals, needs to divulge, or which were made to him for the express purpose of being communicated to another or of being made public, for the reason that from the very nature of the communications and the purpose with which they are made the conclusion is irresistible that the client intended to authorize the attorney to communicate them, and waived his privilege to have them preserved in secrecy.

Thus, in *Mitchell v. Bromberger*, 2 Nev. 345, in a suit by the attorney for fees, where the defense was inefficiency of service, he was permitted to show fully not only directions given, but facts communicated, to him by his client; the court saying· "It would be manifest injustice to allow the client to take advantage of the privilege to the prejudice of his attorney, or that it should be carried to the extent of depriving the attorney of the means of obtaining or defending his own rights. It is, therefore, held that in such cases he is exempted from the obligation of secrecy. . . . We think it safe to say that whenever in a suit between the attorney and client the disclosure of privileged communications becomes necessary to the protection of the attorney's own rights, he is released from those obligations of secrecy which the law imposes upon him." In *Nave v. Beard*, 12 Ind. 318, misconduct of the attorney was set up by way of counterclaim to a note given for fees. Communications and instructions to the attorney were held not privileged. In *Rochester Bank v. Suydam*, 5 How. Pr. 254, already described, the court said: "Where the attorney or counsel has an interest in the facts communicated to him, and when his disclosure becomes necessary to protect his own personal rights, he must, of necessity and reason, be exempted from the obligation of secrecy. . . His clients, by giving him a direct interest in the facts from time to time communicated to him, and by dealing with him upon the footing of those facts, have, as it strikes me, voluntarily waived their right to concealment between themselves and the attorney." In that case disclosure was allowed in a suit by one who had dealt with the attorney, because his rights depended on those of the attorney.

In *Burnside v. Terry*, 51 Ga. 186, where the agreement accompanying a conveyance was made through the medium of Terry's attorney, and he was called to prove his authority, the court said: "If the fact of the attorney's having this au-

thority was communicated by him to Burnside, and Burnside, through him, made the contract, and acted on it, and it was accordingly carried out, it could not be that the giving of such authority was such a communication by client to attorney that it is protected by law against being proven by the attorney. If a party holds out his attorney as one having authority from him to make a special contract respecting pending litigation, and the attorney acts upon it, treats with his antagonist, and thereby secures important rights to his client, he cannot deny the right of the attorney or of the opposite party to prove by the attorney the contract and the authority to make it." In *Henderson v. Terry*, 62 Tex. 281, where propositions were made by the adverse party to the attorney, by him communicated to his client, and instructions given him with reference to accepting the same, the court held that he should testify; saying: " Obviously Terry intended that his attorney should make known to Henderson his reply to the proposition; hence it will be seen that it was not a proposition made to the attorney for the purpose of securing from him professional aid or advice, but was made by Terry with the intention that it should be communicated to the other party. Clearly, the court erred in excluding the evidence." In *Waldo v. Beckwith*, 1 N. M. 182, where the question of plaintiff's partnership was material, defendant called a former attorney to testify that instructions had been given him to commence a previous suit on behalf of the plaintiff and two others as copartners. The court held the communication not privileged, saying: " The attorney was informed of the names of the members of the firm for what purpose? For the express purpose of being published. He was to institute suits for them, and the publication, in legal form, was to enable them to prosecute them. . . . It was made known to the attorney, and at the same time in the same acts to third persons, courts, and the public. It was not, in its nature, private, and could

in no sense be termed the subject of a confidential communication."

In *Bartlett v. Bunn*, 56 Hun, 507, where the defense was that money had been paid out by defendant on the direction of plaintiff, given through the medium of plaintiff's attorney, the attorney was required to give evidence of the communication of such directions to him by his client. The court said, after stating the general rule as to privileged communications: "But this prohibition may be waived by the client, and, when the communication is made for the purpose of its publication or communication to another, it necessarily loses its privileged character. It follows, therefore, that when, from the very nature of the communication, it was designed by the author for another, and to be communicated to such other, it loses its character as privileged." In *Rosseau v. Bleau*, 131 N. Y. 177, where it was claimed that a deed had been delivered by the client to his attorney for a third person, the attorney was held competent and required to testify to the instructions given him by his client. The court said: "Such communication from client to attorney is not within the prohibition of the section of the Code, and the attorney was always competent to prove it, as from its very nature it was not made in professional confidence, nor intended to be confidential, but, on the contrary, imparted to another. It has never been held that a verbal message communicated from client to attorney to be delivered to a third person cannot be proved in behalf of the person to whom the message was sent by the testimony of the attorney. . . . When the deceased commissioned the witness to deliver the deed to the grantee named therein, she necessarily waived all the objection that she might otherwise make to proof of that fact by the attorney." It is upon this same principle of waiver, inferred from the purpose of publication or communication to another, that attorneys who, at the request of grantors or testators, become subscribing

witnesses, are allowed and required to testify to the transaction. *Matter of Coleman's Will*, 111 N. Y. 220; *McMasters v. Scriven*, 85 Wis. 162.

The transaction here between Felker and plaintiff, if it took place, would fall obviously within all of the reasons of the cases above quoted to justify inference of an implied authority to him to testify with reference thereto, and waiver of any privilege of secrecy. The attorney's own interests are vitally affected, for, if he may not prove that he had authority to settle the claim of plaintiff against the defendant, and to receive from the latter money in consideration thereof, he is placed in an attitude of fraud, and his standing and repute in the business world must suffer. Again, the irresistible effect of the granting of authority to one's attorney to deal with a third person is to authorize that attorney to communicate the fact, whether he does it by words or solely by executing the authority. Indeed, he cannot perform the service delegated to him without so communicating. The rule, therefore, outlined by the above-cited authorities, that an attorney is not restrained by any duty of confidence to his client to withhold the fact that he has received from that client authority as an agent to deal with a third person, certainly after the authority has been acted on, is founded upon the soundest reason, and is absolutely necessary to prevent the privilege of secrecy from being made an implement of injustice and fraud. The ruling of the court that Mr. Felker could not testify as to whether authority was given him by his client to make the written settlement which he did make was error.

Even more obviously erroneous was the ruling that the plaintiff was protected by the same privilege from answering the question whether he received from Felker, Goldberg & Felker the money paid them by defendant upon this settlement. *State ex rel. Hardy v. Gleason*, 19 Oreg. 159, 162; *Williams Bros. v. Young*, 46 Iowa, 140, 143; *C. Au'tman & Co. v. Ritter*, 81 Wis. 395.

For these errors the judgment before us must be reversed. Other assignments need not be discussed, as they present questions not likely to arise again in the case in view of the rules of law already decided.

*By the Court.*— Judgment reversed, and cause remanded for a new trial.

BARDEEN, J., took no part.