Shaft vs. Carey and others.

SHAFT, Respondent, vs. CAREY and others, Appellants.

*May 18 — June 21, 1900.*

Landlord and tenant: Leaseholds: Appurtenances of ingress and egress:
Restrictions in lease: Injunctions.

1. Appurtenances of ingress and egress essential to the use of leased
premises and reasonably within the contemplation of the parties
at the time of the leasing are as much a part of the estate con-
veyed as the premises specifically described. Thus, where a pas-
sageway and door connecting the office of an hotel with a room in
the same building leased for a saloon or bar room existed at the
time of a renewal of the lease and were essential to the proper use
and enjoyment of the demised premises, the right to use them be-
came part and parcel of the leasehold interest and could not law-
fully be interfered with by the lessor or his grantees during the
term.

2. After the demise of a room in a hotel for a saloon for the term of
one year, which was renewed for four years, changes were made
whereby the demised room was connected by a door and passage-
way with the hotel office. There was no agreement in the lease
as to such door and passageway or their use in connection with
the demised premises. *Held* that, basing his right to relief upon
his lease, the tenant could not maintain an action against the land-
lord for closing the door and passageway unless it definitely ap-
peared that they existed when the lease was renewed.

3. Where a tenant leased for a saloon a room adjoining the office of his
landlord's hotel, with the exclusive privilege of selling liquors and
cigars in the hotel block, and the landlord built an annex to the
hotel, adjoining the office, used the side of the hotel block as a
wall for the new erection, cut a doorway from the hotel office into
the annex, and closed the one leading into the room occupied by
the tenant, the annex became a component part of the hotel block,
and its construction was a mere subterfuge to avoid the conse-
quences of the restrictions of the lease, and entitled the tenant to
enjoin the selling of liquors and cigars therein.

APPEAL from a judgment of the circuit court for Fond du
Lac county: MICHAEL KIRWAN, Circuit Judge. *Reversed.*
On July 1, 1897, the plaintiff leased of the defendant *Carey*

the saloon or bar room of the Palmer House, in the city of Fond du Lac, for the term of one year, with the privilege to extend the same for four years longer.   The lease contained a stipulation that the plaintiff was to have the exclusive right to sell liquors and cigars in the " Palmer House Block." Plaintiff went into possession, and, at the expiration of his term, gave due notice of his election for an extension.   On November 12, 1898, *Carey* leased to the defendant *Matchette* the hotel building known as the "Palmer House," except certain rooms that had theretofore been leased to others, for a period of five years.   This lease contained a stipulation that the "lessee is not to sell or permit to be sold any wine, beer, or liquors, or any kind of cigars, in said hotel, except as is hereafter agreed."   After the original lease was made with plaintiff, and in the years 1897 and 1898, *Carey* made changes in the inner construction of the hotel, and brought the office and reception room for guests down to the ground floor in the room adjoining the room leased to plaintiff; constructing a passageway between said rooms, placing only a partial screen, by swinging door, with a large glass panel, with the word "Bar" painted thereon, across the same, opening in and out on a swing hinge.   This, it is claimed, was done pursuant to an agreement made at the time said first lease was made.   After setting out the facts stated, the complaint alleges that the defendants became jealous of his rights and privileges under his lease, and attempted to avoid the covenants in said lease, and conspired to take away the profits derived from the exclusive right to sell cigars and liquors in said building, and to that end built a lean-to on the east end of the hotel building, using the east wall of the hotel building as one side of the new building, fitted it up for saloon purposes, opened a door from the Palmer House billiard room into said building, and commenced selling liquors and cigars therein.   On May 11, 1899, in the night-time, the defendants closed up and barricaded the door lead-

ing from the hotel office to plaintiff's saloon, and cut off his connection therewith. The plaintiff brings this action to require the defendants to remove said barricade, and to restrain them from selling liquors and cigars in the so-called "Palmer House Annex."

The defendants answered, setting up the lease to *Matchette*, admitting the closing up of the door, the building of the "Annex," and the sale of liquors and cigars therein, but claimed that the so-called "Annex" was not a part of the Palmer House Block, and was not covered by the stipulation in plaintiff's lease. The defendant *Taylor* answered, denying any interest, and alleging that he was merely an employee and agent of the defendant *Matchette*. Upon certain affidavits, showing that the name "Palmer House Block" was confined to the building itself, and did not cover any of the adjacent land owned by *Carey*, and upon the answers of the defendants, a motion was made to dissolve the temporary injunction obtained by plaintiff, restraining them from selling liquors or cigars in the "Annex." A counter motion was made by plaintiff for judgment upon the pleadings. The latter motion was granted, and from the judgment so entered the defendants have appealed.

For the appellants there was a brief by *Bloodgood, Kemper & Bloodgood*, attorneys, and *Jackson B. Kemper* and *H. H. Hayden*, of counsel, and oral argument by *Mr. Hayden*.

For the respondent there was a brief by *Edward S. Bragg*, and oral argument by *John I. Thompson*.

BARDEEN, J. The plaintiff's motion for judgment ought not to have been granted unless it can be said that every fact essential to his entire cause of action has been alleged, and has not been put in issue by the defendants' answers. By his complaint the plaintiff seeks to have the barricade erected by defendants at the rear door of his saloon removed, and also to restrain the sale of liquors and cigars in the so-

called "Annex." The first ground of relief rests upon the ·implied covenant of quiet enjoyment of the leased premises, and the other upon the positive covenants contained in his lease, giving him the exclusive right of sale of liquors and cigars in the Palmer House Block. Whether any ground for relief exists as to the first question suggested depends upon the facts alleged regarding the leasing of the premises. The premises covered by the lease are mentioned as the "saloon or bar room of the Palmer House," including the card rooms contiguous thereto; also, a coal bin in the basement, and space therein for his ice box and for the storage of liquors. It appears that at the time the original lease was made the office and guest room of the hotel were on the second floor of the hotel building, somewhat remote from the room in question. It is not clear from the complaint just how they were connected, although there is an allegation that there was interior communication thereto from the office of the hotel. By subsequent allegations of the complaint it appears very clearly that the passageway leading to the door that was closed up was not in existence at the time the original lease was made. It is alleged that, as an inducement for plaintiff to enter into a lease for said room, *Carey* represented that it was his purpose to bring the hotel office and reception room for guests to the lower floor of the building, "and·by a door connect the said office and reception room immediately with the said Palmer House saloon or bar room." It is also further alleged that down to May 11, 1899, *Carey* fully complied with the terms of said lease, "and also, in the years 1897 and 1898, made the changes in the inner construction in said hotel, and brought the office and reception room for guests down from the second floor to the ground floor, in the room next adjoining the rooms leased to the plaintiff, constructing a passageway between the said· rooms, and placing only a partial screen, by a swinging door with a large glass panel, with the sign 'Bar' painted thereon,

across the same, opening in and out upon a swinging hinge."
Whether this was done and completed prior to the renewal
of the lease on July 1, 1898, the complaint fails to state.
It is evident from the terms of the lease that the proximity of
the room leased to plaintiff to the adjoining rooms of the
hotel was a matter of importance to the parties, and bore
a direct relation to the value of the leasehold. When the
lease was renewed in 1898, the plaintiff was entitled to the
enjoyment of his leasehold interest with the appurtenances
of ingress and egress as they then existed. In other words,
when a person leases a room in a building, with doors and
passageways so connected with other rooms as to be essen-
tial to the use and enjoyment of the one leased, the law im-
plies a covenant that such use shall not be interfered with
during the continuance of such term. The appurtenances
of ingress and egress, essential to use and reasonably within
the contemplation of the parties at the time of the leasing,
are as much a part of the estate conveyed as the room itself,
and any interference therewith is an invasion of the rights
of the lessees for which the law affords a remedy. But the
implied covenant of quiet enjoyment only applies to condi-
tions in existence at the time of the leasing. It does not
extend to things not *in esse* at the time of the demise.
1 Taylor, Landlord & T. § 256. The statute (sec. 2204, Stats.
1898) to the effect that no covenant shall be implied in any
conveyance of real estate, whether such conveyance contain
special covenants or not; does not apply to leasehold estates.
This is the rule now established in New York, from which
our statute was taken, although a different conclusion was
first arrived at. *New York v. Mabie,* 13 N. Y. 151. If the
door and passageway in question existed at the time the
lease was renewed, and were essential to the proper use and
enjoyment of the estate conveyed, the right to such use was
more than a mere privilege or easement. It becomes a part
and parcel of the leasehold interest, binding upon the lessor

or his grantees.   Plaintiff being in possession of the rooms
at the time *Matchette* took his lease of the hotel building, the
latter was charged with notice of the plaintiff's rights and
interests in the premises, and could claim no greater privi-
leges than his lessor. *First Nat. Bank v. Chafee*, 98 Wis. 42,
and cases cited.   Our great difficulty has been to determine
what the precise conditions were at the time the lease was
renewed.   It is quite certain from the complaint that, at the
time the original lease was made, the door and passageway
in controversy were not in existence.   The allegation of the
complaint that the changes in the inner construction of the
hotel were made and the office brought down to the first
floor "in the years 1897 and 1898" is not an allegation that
the door and passageway existed when the lease was re-
newed.   The plaintiff bases his right to relief upon his lease,
and, unless some right expressly or impliedly granted thereby
has been invaded, he has no legal ground of complaint.   If the
door and passageway were constructed *after* the lease was
renewed, the use of them by plaintiff was merely permissive,
and could be revoked at any time, so far as any covenant
in the lease is concerned.   To entitle the plaintiff to a judg-
ment requiring the removal of the barricade to the door, the
complaint should have alleged with definiteness the precise
condition of things at the time of the renewal, or proof should
have been taken so that the court could have been advised
of the facts as a basis for judgment.   The failure to furnish
such basis, either by definite allegation or proof, is fatal to
the judgment rendered.

The other feature of the case relates to plaintiff's right
to an injunction restraining the sale of liquors and cigars in
the so-called "Palmer House Annex."   Defendants' conten-
tion is that the restriction in the lease cannot be construed
to cover the addition made to the "Palmer House Block"
after the lease was executed.   The exclusive right of sale of
the commodities mentioned, granted plaintiff by his lease,

Shaft vs. Carey and others.

was a valuable one. Such right was recognized in the lease
of the hotel from *Carey* to *Matchette*, in which the latter
bound himself not to sell the same, or permit them to be
sold, in the hotel, except as he might secure plaintiff's lease.
*Matchette* knew of plaintiff's rights, and recognized them
so far as to make the pledge above referred to. Such being
the case, it is immaterial to determine whether the cove-
nant in plaintiff's lease is such as to run with the land. The
defendants claim, however, that the grant of the exclusive
right to sell in the " Palmer House Block " ought not and
cannot be construed to cover the addition subsequently
built. The building of the addition was a mere subterfuge
to avoid the consequences of the restrictions in the leases.
The Annex became and is a component part of the hotel
building. One of its walls is one of the walls of the hotel,
without which the Annex could have no existence. It is
directly connected with the main building by proper doors
and entrances. If it were entirely disconnected with the
hotel building, we should be compelled to say that the lan-
guage of the plaintiff's lease could not be construed to cover
lands outside of the building known as the " Palmer House
Block." But when the added structure became an integral
part of the block, so constructed and designed to be such,
the covenant, being continuing, should be construed to
cover the block in its entirety, in whatever shape it may be,
during the life of the lease. The law will not uphold a
mere trick or subterfuge admittedly adopted to defeat the
plaintiff's rights. The denial of the motion to dissolve the
injunction needs no justification, any further than a state-
ment of the facts.

For the reasons stated, the judgment of the circuit court
is reversed, and the cause is remanded for further proceed-
ings according to law.

*By the Court.*— So ordered.