223 P.2d 570

LAMBROS METALS, Inc. et al. v. TANNOUS et al.

No. 5170.

Supreme Court of Arizona.

Nov. 6, 1950.

54

Clifford R. McFall, of Tucson, for appellants.

Cusick & Watkins, of Tucson, for appellees.

PATTERSON, Superior Judge.

This is an action by Lambros Metals, Inc., as the owner, and Charles Gordon and Gertrude Gordon, his wife, as tenants, of a two-story building in Tucson, Arizona, to compel the appellees to remove certain advertising neon signs and equipment placed on the front wall of said building by the appellees, or for a declaration of the right of appellants to the exclusive possession as against the appellees to that part of the building on which said signs and equipment are located, and for damages.

On July 14, 1947, Lambros Metals, Inc., a corporation, made a written lease with the appellees, George Tannous and Victoria M. Tannous, his wife, covering the entire basement of a proposed building to be constructed and which was thereafter constructed on Lot 14, Block 194, in the city of Tucson. The term of said lease is for five years from November 1, 1947, with an option of an extension for five years. It contains no provision regarding signs or use of any part of the premises for signs or advertising. Appellees Tannous and wife entered into possession of the basement under the lease on January 15, 1948, the approximate date of completion of the building. The building consists of a basement below the street level, being that part of the premises leased to the said appellees, and two stories above the street level.

In November, 1947, appellants Charles Gordon and Gertrude Gordon, his wife, purchased all the stock of said corporation-lessor and entered into possession, on a month-to-month rental with the corporation, of the ground floor or first story of the building, and opened a shoe store therein. Upon purchase of the stock, appellant Charles Gordon became president of the corporation. The remainder of the building was vacant and in possession of the corporation-owner except a portion of the rear of the second-story part of the building.

In November, 1947, appellees Tannous and wife asked Mr. Gordon's consent to the placing of some signs upon the wall of the building facing Pennington Street, which was refused by Mr. Gordon. Thereafter, on January 16, 1948, the attorneys for appellees Tannous and wife wrote the attorneys for Lambros Metals, Inc., and Mr. Gordon that they had been advised by Mrs. Tannous that an attorney for the appellants had informed her on January 15th that a sign could be erected on such wall, and asking confirmation of such information. Thereupon, on January 19, 1948, the attorneys for Lambros Metals, Inc., and Mr. Gordon replied by letter to the effect that such information was incorrect, and advising the attorneys for said appellees that no sign or lettering of any type could be placed upon any part of the building or any area adjacent thereto, except that an arrangement could be worked out whereby the said tenants Tannous and wife could place lettering on the two doors leading into the hallway which served as a means of ingress and egress to the basement and upstairs. Thereafter, on or about January 26, 1948, appellees Tannous and wife caused two neon signs to be installed and placed upon the south wall of said building.

The evidence shows that at each corner of the ground floor, on the front of said building, there is an entrance door from the street over which the signs were placed. Each entrance goes into a vestibule where a stairway leads up to the second story of the building, and another stairway goes down into the basement of the building which is

leased to appellees. The signs are a little more than the width of the door entrance.

The dimension of each sign is 3' x 5' and the signs are fastened to the wall of the building by a ⅞" bolt screwed into the wall. Electricity was in the wires and conduits at the time the signs were put up. The sign installation was made by one of the appellees, Arizona Neon Advertising, Inc. Appellants objected to and protested the placing and installation of the signs, and have since protested and objected to the maintenance thereof and demanded that appellees remove them.

The plans and specifications drawn by the architect of the building show that conduits and outlets for wiring for signs above the two entrance doors to the basement were designated on the plans and were placed in the building accordingly.

The trial court ordered appellants' complaint dismissed, and judgment for the appellees. From the judgment this appeal is prosecuted.

Appellants have made six assignments of error which are summarized in appellants' "Statement of Legal Propositions" as follows:

I. The lessee of a portion of a building has no right to install or maintain an advertising sign on an outside wall of the building not bounding the premises leased to him.

II. Parol or extrinsic evidence is not admissible to vary, add to, modify, or contradict the terms or provisions of a written instrument.

III. An oral agreement granting the right to use and possess, for a period of five years or longer, the exterior walls of a building for the installation and maintenance of advertising signs, is within the Statute of Frauds and therefore invalid and unenforceable.

Legal propositions I and II will be considered first.

It is appellants' contention that the trial court erred in admitting parol testimony pertaining to conversations between the parties before the lease was executed and afterwards, thereby agreeing that appellees could place the signs on the building.

Appellants further contend that the entire agreement was included in the written lease and that no verbal conversation prior to, simultaneous with, or subsequent to the execution of the written lease pertaining to the signs is admissible, and that it was error for the court to admit such evidence over the objection of appellants.

In considering the parol evidence rule in this regard, we find that many of the courts have made a distinction in applying the rule to cases of written leases and other written agreements. However, this court in the case of Tietjen v. Sneed, 3 Ariz. 195, 24 P. 324, 325, has decided that parol evidence is not permissible to vary, add to, or contradict a written lease: "We think the agreement sued on was

complete and entire within itself. It was definite as to the subject-matter, price, and term; and any prior or contemporaneous verbal agreement must be deemed to have been merged in the written memorandum, and that cannot be varied by proof of such verbal understanding. The demurrer was properly sustained. * * *"

The great weight of authority is to the effect that parol evidence is not permissible to show an oral antecedent or contemporaneous promise or agreement inconsistent with the written agreement where the written agreement is complete and entire within itself. Tietjen v. Sneed, supra.

This court has strictly applied the parol evidence rule pertaining to written agreements other than leases, S. H. Kress & Co. v. Evans, 21 Ariz. 442, 189 P. 625; Stewart v. Southwest Cotton Co., 38 Ariz. 547, 2 P.2d 1041.

In view of this court's prior decisions applying the parol evidence rule, it is apparent that the trial court erred in admitting in evidence the conversations complained of, antecedent and subsequent to the execution of the lease between the parties.

However, in view of the other evidence presented, consideration must be given to the rights and obligations of the parties under the lease in order to determine whether or not the judgment of the trial court can be upheld notwithstanding the inadmissibility of the conversations referred to.

■ The lease makes no reference to the right to place any signs upon the building, however, certain implied rights may be involved in a lease of this nature. In many instances the law gives, by implication, certain rights in connection with the use and enjoyment of the premises unless express reservation is made by the landlord in this respect.

"The lease carried with it all permanent improvements on the premises, including everything thereon used in connection with its enjoyment, or reasonably necessary to such use. The grant of an entire structure carries with it the land on which it is located, and includes all easements necessary to the full enjoyment of the premises, including the right of free ingress and egress therefrom. The leased premises include in their use the use of all inner and outer walls for all such purposes as are not inconsistent with the terms of the lease." Landlord and Tenant, Bennett, page 59.

"*Appurtenances and Easements in General.* As a general rule everything which belongs to the demised premises or is used with, and appurtenant to, them and which is reasonably essential to their enjoyment passes as an incident to them, unless specially reserved. This rule, for example, applies to a lease of a part of a building, which passes with it, as an incident thereto, everything necessarily used with or reasonably necessary to the enjoyment of the part demised. While the necessity for

beneficial use of leased premises, necessary to create an appurtenance, may not be an absolute necessity in the sense that it is completely indispensable, it must be a real necessity and not a mere convenience or advantage, and whether something claimed as an appurtenance is necessary to the beneficial use of the premises, so as to pass as an incident of the demise, is a question of fact.

\* \* \* \* \* \*

"The term 'appurtenances' in a lease includes incorporeal easements, rights, and privileges, although not land, and gives to a tenant whatever is attached to, and used with, the premises as incident thereto and convenient or essential to the beneficiary's use or enjoyment thereof, and any easement of servitude used or enjoyed with the demised premises, but its use does not vary the effect of the grant or extend it so as to include other lands not a part of that described, \* \* \*." 51 C. J. S., Landlord and Tenant, § 293.

51 C.J.S., Landlord and Tenant, § 289 et seq.; Rayhertz Amusement Corp. v. Fulton Improvement Co., 124 N.J.Eq. 121, 200 A. 557; Mayer v. Hazzard, 10 Cal.App.2d 1, 51 P.2d 189; Bellon v. Silver Gate Theatres, 4 Cal.2d 1, 47 P.2d 462; Miller v. Fitzgerald Dry Goods Co., 62 Neb. 270, 86 N.W. 1078.

" \* \* \* Accordingly, it has been decided that, upon a lease of a room or rooms in a building, the lessee is entitled to the use of the stairs, hallways and entrances which have ordinarily been used as a means of access thereto, although no mention thereof is made in the instrument of lease, and likewise to the use of closets and wash rooms contiguous to the rooms, and to the use of a doorbell or knocker. And a lease of an office room has been regarded as entitling the lessee to maintain signs on the stairway leading thereto. \* \* \*" Landlord & Tenant, Tiffany, Vol. 1, Sec. 128, p. 819.

"By the terms of the lease the premises are described 'as the store numbered 491 Washington street, with the basement under the same and the room numbered 26 on the fourth floor of the building numbered 493 Washington street, known as the "Blake Building."' This description left the vestibule and stairway in the possession and control of the lessor. Marwedel v. Cook, 154 Mass. 235, 28 N.E. 140. But it is expressly found that the window is of much value for advertising his wares, and 'this use by defendant was contemplated by him and his lessor when he took his lease, and constituted a material element in the rental to be paid.' By the construction of the building, evidently such an arrangement must have been intended for the use of whoever occupied the store as a tenant. Case v. Minot, 158 Mass. 577, 33 N.E. 700, 22 L.R.A. 536. And this is tantamount to a finding that the beneficial use of the premises described and leased as a store required that a view of the window should not be obstructed permanently, and hence

this incorporeal right passed by implied grant as a part of the demise. Salisbury v. Andrews, 19 Pick. [Mass.] 250, 255; Dexter v. Manley, 4 Cush. [Mass.] 14." Whitehouse v. Aiken, 190 Mass. 468, 77 N. E. 499, 500.

It is apparent from these well-established rules that a lessee may enjoy many reasonable, implied rights in connection with the leasing of premises which are not specifically reserved.

In considering implied rights under a written lease, parol evidence may be admitted solely for the purpose of establishing what is properly appurtenant to the demised premises and reasonably necessary for their proper enjoyment, in cases where the landlord has not made express reservations pertaining thereto. Evidence for such a purpose does not violate the parole evidence rule. 51 C.J.S., Landlord and Tenant, § 293.

The case of Page v. Martini, Tex.Civ. App., 293 S.W. 253, 254 is a case nearing the factual situation in this controversy except the leased premises was the second story of a building instead of a basement, but the same legal principles are applicable.

" * * * the maintenance by a lessee of such signs or lights as are properly appurtenant and necessary to the use of the entrance to the premises leased is a right incident to and included in the right of ingress and egress through such entrance.

We agree with appellant in both of these propositions.

\*  \*  \*  \*  \*  \*

" * * * Appellant, as lessee of the upper floor of the building acquired by her lease the same legal right in the stairway and its entrance in appellee's hallway that she would have acquired in such stairway had its entrance remained on the street. Appellant leased the entire upper floor of the building, and the stairway giving entrance to this floor was essential and necessary to the use and enjoyment of the leased premises and an appurtenant portion thereof which passed to appelleee with the lease of the upper story of the building. 36 C.J. p. 30, par. 632. The right to this stairway and its entrance in the hallway below were as much a part of the estate conveyed by the lease as the rooms and hallway in the second story of the building. Shaft v. Carey, 107 Wis. 273, 83 N.W. 288.

"If the entrance to the stairway had remained on the street, appellant's right under her lease to place a light and advertising sign on or over the doorway of such entrance could not be doubted, and the only modification of this right caused by the removal of the entrance to the inside of appellee's hallway is that it may not be exercised in such manner as to unreasonably interfere with appellee's use and enjoyment of the hallway." Page v. Martini, supra.

When we consider the fact that appellees entered into a written agreement pertaining to the leasing of a basement be-

low the street level before the building was completed and that they, no doubt, expended large sums of money for the pool tables, equipment, fountain, and miscellaneous incidentals, and that the landlord was advised of the nature of the business which they intended to operate, and which was entirely dependent upon the public patronage for income, then it is inconceivable that the parties did not contemplate and realize that it would be necessary that appellees have the right to display a sign designating their place of business and its nature to the public in a reasonable manner.

The signs placed above the entrance doors of appellees' place of business are conservative and are located above the door entrances to a vestibule which makes accessible a stairway leading to the second story and another stairway leading down to the basement leased by appellees.

In placing the signs above the entrances mentioned appellees were exercising an implied right appurtenant to the leased premises.

In view of the foregoing conclusions it is unnecessary to consider the Statute of Frauds Assignment.

The judgment of the lower court is affirmed.

LA PRADE, C. J., and UDALL, STANFORD and PHELPS, JJ., concur.

Justice DE CONCINI having disqualified himself, the Honorable W. E. PATTERSON, Judge of the Superior Court of Yavapai County, was called to sit in his stead.