FRED A. OLSON AND EDNA V. OLSON, HUSBAND AND WIFE, ET AL., PLAINTIFFS AND RESPONDENTS, *v.* THE CITY COMMISSION OF THE CITY OF HELENA, MONTANA, ET AL., DEFENDANTS AND APPELLANTS.

No. 10928.
Submitted September 13, 1965. Decided October 29, 1965.
Rehearing denied November 16, 1965.
407 P.2d 374.

Smith, Smith & Smith, Helena, H. J. Luxan (argued), Helena, J. Miller Smith (argued), Helena, for appellants.

Charles V. Huppe (argued), Helena, for respondents.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment for plaintiffs which judgment held Ordinance No. 1663 of the defendant City of Helena null and void.

Plaintiffs below are respondents here and will be referred

to as respondents. They are residents and property owners of the City of Helena.

Defendants below are appellants. They include members of the City Commission of the City of Helena and H. F. Hustad and Vera O. Hustad and Hustad Corporation. The appellants Hustad, individually and the corporation are likewise property owners of the City of Helena.

On June 29, 1964, the City Commission unanimously passed and approved, over the protests of respondents, a zoning ordinance, amendatory of pre-existing zoning ordinances of said city, reclassifying from Class "A" Residential District to Class "C" Business or Commercial District, certain property within said city owned by the appellants Hustad. The amendatory ordinance is designated Ordinance No. 1663, and is entitled as follows:

"ORDINANCE NO. 1663.

"An ordinance amending title 11, Chapters 1, 2, 3, 5, 6, 7, 8, 9, 10, 11 and 12 of the City Code of Helena, Montana by reclassifying the following described lots and blocks in the Lockey Addition to the City of Helena, Montana: Lots 1 through 9 and Lots 30 through 48 in that portion of Block 21 lying south and west of Boulder Avenue, and Lots 1 through 19 in Block 20, all in the Lockey Addition to the City of Helena, Montana, from class 'A' residential district to Class 'C' Business or Commercial District."

Respondents brought this action under the Montana Uniform Declaratory Judgments Act for the purpose of invalidating the ordinance. The pleadings consist of the complaint and the joint answer. Both plaintiffs and defendants made discovery under M.R.Civ.P., Rule 36, consisting of plaintiffs' Request for Admissions and defendants' Responses thereto, and defendants' Request for Admissions and plaintiffs' Responses thereto. Upon completion of discovery, defendants moved for summary judgment under M.R.Civ.P., Rule 56. At the hearing of the motion it was stipulated by counsel that the cause pre-

sented no genuine issue as to any material fact and that the same might be disposed of upon the merits upon defendants' motion. Following submission of the cause on oral argument and written briefs, the trial court made and entered Summary Judgment in favor of plaintiffs and against defendants, declaring Ordinance No. 1663 to be null and void. A written opinion was filed by the trial judge.

The opinion mentioned is as follows excluding the quoted ordinance No. 1663:

"The only issue in this cause is an issue of law as to the validity of Ordinance No. 1663, of the City of Helena, Montana, finally passed and adopted by the City Commission of the City of Helena, Montana, on June 29, 1964, by the favorable vote of all of the members of said Commission, said ordinance being entitled:

\* \* \* \* \*

"The applicable law is to be found in Sections 11-2704 and 11-2705, Revised Codes of Montana, 1947.

"The Court finds no merit in the contention of plaintiffs that the ordinance is invalid because it involves a 'departure from the general scheme established by state law for general zoning ordinances.' However, it appears on the face of the ordinance that the City Commission attached legal significance to the fact that the owners of less than 20% of the area of all of the lots entitled under Section 11-2705 to protest the proposed zoning change, had protested. However, this ratio is nowhere mentioned in the statute. It is the Court's conclusion that the City Commission's construction and application of the provisions of Section 11-2705 was so palpably erroneous as to invalidate its legislative action predicated thereon. The ordinance is void."

This appeal is taken from the whole of the judgment and the sole question is whether the ordinance is valid.

The City of Helena is an incorporated city organized under the "Commission-Manager Plan" for which provision is made in

Title 11, Chapter 32 and 33, R.C.M.1947. The governing body of the City of Helena is a commission having five elected members headed by a Mayor.

A number of years prior to the events giving rise to this controversy, the City of Helena, acting pursuant to the powers delegated by Title 11, Chapter 27, R.C.M.1947 (enacted Chapter 136, Montana Session Laws, 1929), adopted comprehensive zoning ordinances subdividing the areas within its territorial jurisdiction into original zoning districts and establishing use classifications for the lands within each district. Among the zoning districts and land use classifications established by such original zoning ordinances are the following: Class "A" Residential District; Class "C" Business or Commercial District; and Class "D" Commercial or Industrial District. Such ordinances established other zoning districts and land use classifications none of which is material to this action. From time to time since the adoption of such original zoning ordinances, the City has acted to amend the boundaries of the zoning districts originally established by means of amendatory ordinances. Prior to the events giving rise to this controversy the original zoning ordinances of the City of Helena, as theretofore amended, had been codified as Title 11 of the City Code of Helena.

This litigation concerns the zoning classification of portions of the Lockey addition to the City of Helena. The portions, all owned by appellants Hustad, include some 47 lots, lying in two blocks, bounded on the NE by Boulder Avenue, on the east by Montana Avenue, on the south by an alley, running east and west between Montana Avenue and Dakota Avenue, on the west by Dakota Avenue, and a short distance on the north by Helena Avenue. The re-zoned portion, some 47 lots, is in one piece, that is, it is all owned in one parcel and Davis Street, which had run east and west between block 20 and block 21 had been closed by Ordinance No. 1568 as had an alley in block 21. With those street and alley closures (not contested.

here), the re-zoned area was one ownership and one piece of land.

Prior to the adoption of Ordinance No. 1663 the zoning was such that north and east of the re-zoned area were classified as either Class "C" or Class "D", Business, Commercial and Industrial. The re-zoned area and the land south and west were Class A residential. The re-zoned area was, in fact, vacant lots. The balance of the Class A area immediately adjacent, to the south and west was single and multiple dwelling units.

To the northwest, north and east, the entire adjacent area is presently used as industrial and commercial.

Prior to January, 1964, the owners of the re-zoned area, appellants Hustad, decided to enlarge their "Hustad Center," a commercial shopping center, adjacent to the northwest. They owned the lots included in the re-zoned area. Included in their development plan were two proposals. One was the closure of a portion of the east-west alley in Block 21 between Boulder and Dakota Avenues, and the closure of Davis Street between Montana and Dakota Avenues. The other was the zoning reclassification to permit commercial use of what we have called the re-zoned area. Both proposals were referred to the Municipal Planning Board, which Planning Board recommended the same. On January 27, 1964, the respondent City Commission adopted Ordinance No. 1568 accomplishing the first proposal, that of closure of Davis Street and the alley. This Ordinance No. 1568 is not contested.

As to the second proposal, the reclassification to commercial use or rezoning, appellants Hustad met opposition. Three successive applications were made by appellants Hustad. The City Commission, on each occasion, passed a "Resolution of Intention" to reclassify the lots in question, fixed a date for written protests, and a date for public hearing. In each instance, written protests were filed, hearing was had; and, on the first two applications the City Commission declined to effectuate the proposed zoning reclassification.

On the third application, Exhibit "B," the Commission minutes of June 22, 1964 show the following:

"Mr. John Vance, Attorney representing the protestants explained why he had advised his clients to present two separate protests. Mr. Vance stated, in his opinion, there are three ways protests may be presented, 1st—20% of the entire area; 2nd—20% of an area adjacent in rear thereof; 3rd—20% of area next in front. If 20% adjacent in rear thereof oppose then application must fall unless three fourths of the Commission overrule in the opinion of Mr. Vance. At this time there was a short discussion between Mr. Vance and City Attorney Chilton on the interpretation of the Zoning Law. Mr. H. J. Luxan, Attorney representing Mr. Hustad, reviewed previous applications for this re-zoning giving reasons why such had failed; and stated he now felt the Commission should take favorable action as the protests totalled only 18.51% of the total area.

"Mayor John W. Schroeder declared the Hearing on Reclassification on Lots in Blocks 20 and 21 in the Lockey Addition from 'A' to 'C' Zone closed, and the problem taken under advisement.

"Mayor Schroeder brought up for consideration the rezoning of certain blocks and lots in the Lockey Addition.

"The Commission, in the exercise of the discretion vested in them, and inasmuch as only 18.51% of the total area within the protest perimeter had protested the reclassification of Lots 1-9, and 30-48, Block 21 lying South and West of Boulder Avenue, and Lots 1-19 in Block 20 of the Lockey Addition, from Class 'A' Residential to Class 'C' Business or Commercial District, concluded that said reclassification as petitioned for and as set forth in Resolution of Intention No. 6330 should be granted, and the following action was taken:

"Commissioner Lewis presented the following motion, 'I move that the Commission overrule the separate protests of Fred A. Olson, Edna V. Olson, Earl C. Zuelke, Isabel H. Zuelke and Jennye H. Baker, dated June 19, 1964, which protestants.

own property immediately adjacent in the rear of the area sought to be re-zoned, and within 150' therefrom.' Seconded by Commissioner Munger and carried by the following Aye and Noe vote, to-wit: Ayes, Mayor Schroeder, Commissioners Foley, Munger, Bozman and Lewis. Total 5. Noes, none.

"The following Ordinance was presented and read.

"Commissioner Bozman presented the following motion, 'I move that Ordinance No. 1663 be first passed and approved. Seconded by Commissioner Munger and carried by the following Aye and Noe vote, to-wit: Ayes, Mayor Schroeder, Commissioners Foley, Munger, Bozman and Lewis. Total 5. Noes, none.'"

R.C.M.1947, section 11-2704 provides:

"*Method of procedure.* The city or town council, or other legislative body of such municipality shall provide for the manner in which such regulations and restrictions and the boundaries of such districts shall be determined, established, and enforced, and from time to time amended, supplemented, or changed. However, no such regulation, restriction, or boundary shall become effective until after a public hearing in relation thereto, at which parties in interest and citizens shall have an opportunity to be heard. At least fifteen (15) days notice of the time and place of such hearing shall be published in an official paper, or a paper of general circulation, in such municipality."

R.C.M.1947, section 11-2705, provides:

"*Changes.* Such regulations, restrictions, and boundaries may from time to time be amended, supplemented, changed, modified, or repealed. In case, however, of a protest against such change, signed by the owners of twenty per centum (20%) or more either of the area of the lots included in such proposed change, or of those immediately adjacent in the rear thereof extending one hundred and fifty (150) feet therefrom, or of those directly opposite thereof extending one hundred and fifty (150) feet from the street frontage of such opposite lots, such amendment shall not become effective except by the

favorable vote of three-fourths (¾) of all the members of the city or town council or legislative body of such municipality. The provisions of the previous section relative to public hearings and official notice shall apply equally to all changes or amendments."

A plot of the area, both that to be re-zoned and the area surrounding was prepared. A "protest area boundary" was established. On the first two applications denied, it was determined that on a square footage ownership basis, more than 20% protested. The City declined to act. However, on the third application, three owners had withdrawn their protests and the City determined that now only 18.51% of the area were protesting. They then acted unanimously.

From the trial court's opinion quoted heretofore, it is seen that the trial judge held the ordinance invalid because, as it put it, "the City Commission attached legal significance to the fact that the owners of less than 20% of the area of all of the lots entitled under section 11-2705, to protest the proposed zoning change, had protested." The Court then declared this so palpably erroneous as to invalidate the city's legislative action.

We note from the previously quoted Exhibit "B" of the Commission minutes that the protestant's counsel attached "legal significance" to 20% protests in each of three areas. We note too that R.C.M.1947, section 11-2705 provides for a ¾ Commission vote to overrule a protest of over 20%. Here it was unanimous.

So far, our recitation would indicate no problem existed. After all, a unanimous Commission acted after full consideration extending over three separate hearings with full opportunity to be heard. But, a unique, or at least in our view, an unusual, interpretation of R.C.M.1947, section 11-2705 was presented. We shall attempt to describe the area protesting with reference to the statutory language of section 11-2705. We are told, as was the City Commission, that under that language three separate protesting areas exist:

(1) the re-zoned area,

(2) those immediately adjacent in the "rear" thereof,

(3) those directly "opposite" thereof.

Just what direction the "rear thereof" as distinguished from those directly "opposite thereof" is difficult to say. What we have termed at least unusual, is that the consideration of "rear" and "opposite" somehow produced two separate protest groups, the opposite however, including the "rear"—but, the "rear" not including the "opposite." We point out that this consideration, according to the minutes of the City Commission, was urged by counsel for protestants.

Three owners, Baker, Zuelke and Olson, owned property in what is called the "rear" of the zoned area. This is to the south across the alley running east and west between Montana Avenue and Dakota Avenue. Of what is designated the "rear" these three owners constitute 58%. According to section 11-2705, under this interpretation, it would require a ¾ Commission vote. The vote was unanimous.

The same three owners, Baker, Zuelke and Olson, also were signators to protests from the "opposite" owners. Combined with others protesting, they then made up 25.42% of the property in the separate "opposite" owner group. Thus again, under section 11-2705, a ¾ vote was required. The vote was unanimous.

In the re-zoned area itself, appellants Hustad being the sole owners, there were no protests; and the respondent protesting owners insist that the re-zoned area could not be used to calculate protest percentage. Also, respondent protestants argue that to include in the protest perimeter areas of industrial and commercial ownership already in existence somehow is in derogation of the law, particularly section 11-2705.

All of the foregoing attempt at a description of the protest areas suggest that this Court, like the City Commission, attaches "legal significance" to the 20% protests! But, really, this is begging the question. What section 11-2705 does is, under the circumstances of protests, to categorize the locations

only to indicate the required commission vote. In this case, the required ¾ vote was shown. The Commission acted unanimously and thus fulfilled the statutory requirement. The record affirmatively shows it.

The only significance we can see in the recitation by the City Commission is to show the fact that it deliberately, and intentionally passed the ordinance effecting the proposed zoning change. This it had legislative authority to do. It cannot have been "palpably erroneous," and we so hold.

We are reminded in respondent's brief that relying upon a unanimous vote, as we have here, is a cold argument premised upon the end justifying the means. However, as we have attempted to point out, the City Commission's attempt at full consideration and explanation was urged by the respondent protestants in what we have referred to as a unique interpretation of protest perimeter areas; this is the opposite of attaching legal significance to less than 20% of the entire area. It demonstrates full consideration.

For the foregoing reasons, the judgment of the district court is reversed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES JOHN CONWAY HARRISON and DOYLE concur.

MR. JUSTICE ADAIR dissenting:

I dissent.

As I view the record now before the Supreme Court on this appeal I would affirm the judgment pronounced and entered by District Judge C. B. Sande, in favor of the plaintiffs and respondents in this cause, all of whom are long-time residents and property owners in the City of Helena who are adversely and most harmfully affected by the defendant City of Helena's Ordinance No. 1663. In view of the foregoing I respectfully dissent to the majority opinion filed on this appeal.