MATTEUCCI'S SUPER SAVE, DRUG, a Montana Corporation, Plaintiff and Appellant, *v.* HUSTAD CORPORATION, a Montana Corporation; Jewel Companies, Inc., a New York Corporation, Defendants and Respondents.

No. 11998.

Submitted Oct. 28, 1971.

Decided Dec. 8, 1971.

491 P.2d 705.

The Honorable Thomas Dignan, District Judge, sat for Mr. Justice John C. Harrison.

Swanberg, Koby & Swanberg, Great Falls, Randall Swanberg, argued, Great Falls, for appellant.

Loble, Picotte & Loble, Helena, Henry Loble and Peter Pauly, argued, Helena, Luxan & Murfitt, Helena, Walter S. Murfitt, Helena, argued, Anderson, Symmes, Forbes, Peete & Brown, Billings, Jerome Anderson, argued, Billings, Patrick F. Hooks, argued, Townsend, John J. Quinn, Great Falls, for respondents.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment of dismissal of plaintiff's claim, entered as a result of the granting of a motion for summary judgment in favor of defendants.

Plaintiff is Matteucci's Super Save, Drug, a Montana corporation and will be referred to as Matteucci. Defendants include Hustad Corporation, a Montana corporation, called Hustad; Buttrey Foods, Inc., later merged with Jewel Companies, Inc., a New York Corporation; Osco Drug, Inc., an Illinois corporation; and Osco Drug Northwest, Inc., a Delaware corporation. The last three defendants will be referred to by name or as defendants.

Matteucci commenced the action in 1967 under the provisions of the Uniform Declaratory Judgments Act, sections 93-8901 through 93-8916, R.C.M.1947, seeking injunctive relief and damages against Hustad and Buttrey. Matteucci alleged a breach of restrictive covenant or exclusive on the part of Hustad and Buttrey; conspiracy on the part of Hustad and Buttrey; and, direct and conscious intermeddling on the part of Buttrey with certain contract relations between Mateucci and Hustad.

Subsequently after various procedural maneuvers, issue was joined and extensive discovery proceedings had. Upon comple-

tion of discovery, defendants filed motion for summary judgment. On October 23, 1970, District Judge L. C. Gulbrandson presiding, entered findings of fact, conclusions of law and order granting summary judgment.

The briefs and a transcript on a hearing to correct and modify the record make much ado about certain facts, but we shall not discuss this feature since, in our view, those facts are not material to a determination of the issue.

Plaintiff, appellant here, urges some eight issues on appeal. Plaintiff groups these issues into four subjects (1) summary judgment, (2) whether an "exclusive" can have extraterritorial validity, (3) if so, whether the exclusive may be enforced against another lessee, and (4) the effect of closing plaintiff's store.

The first two groups are determinative of this appeal. The litigation arose over the interpretation of an "exclusive clause" contained in a lease between Hustad, as lessor, and plaintiff, as lessee.

On May 5, 1956, Hustad entered into a written lease agreement with plaintiff whereby Hustad agreed to construct a store building on premises owned by it in the city of Helena, to wit, in Block 24 of the Lockey Addition, and to lease a portion of the floor area of such store building to Matteucci. The lease agreement was received in evidence, without objection, as Defendants' Exhibit No. 1, consisting of 15 typewritten pages and 8 pages of plans and specifications, including the plot plan. The leased premises, as set forth in the lease agreement, are described as:

"* * * the following described premises, situated in the City of Helena, Lewis and Clark County, Montana, to-wit:

"A room approximately Forty feet (40') by One Hundred Forty Feet (140') in a building to be constructed in Block Twenty Four (24) of the Lockey Addition to the City of Helena, Montana, and to be located in said Block as shown by the plot plan hereinafter referred to."

Paragraph 6 of the Matteucci-Hustad lease agreement provided in part:

"* * * Lessor covenants and agrees that during the term hereof, Lessee shall have the exclusive right to operate a retail drug store upon the premises referred to herein and that no portion of the entire premises covered by the plans and specifications shall be leased or subleased to any other person, firm or corporation for such purpose. * * *".

Paragraph 20 of the Matteucci-Hustad lease agreement provided in part:

"20. *Representations; Relationship of Parties; Acceptance; Etc.* (a) Lessor has made no representations, warranties or agreements regarding the premises or any building or improvements thereon, or any other representations, warranties or agreements, except as are expressly set forth in this Lease. * * *".

Prior to, or contemporaneously with, the construction of the aforementioned store building on such premises, Buttrey entered into an agreement with Hustad, dated April 25, 1956, to lease a portion of the floor area of the store building. The leased premises, as set forth in the Buttrey-Hustad agreement, were described as:

"* * * the following described premises, situated in the City of Helena, Lewis and Clark County, Montana, to wit:

"The retail food market consisting of approximately Fourteen Thousand (14,000) square feet to be constructed in Block Twenty-four (24) of the Lockey Addition to the City of Helena, Montana, and to be located in said Block as shown by the plot plan hereinafter referred to."

Paragraph 6 of the 1956 Buttrey-Hustad lease agreement provided in part:

"6. *USE OF PREMISES*: Lessee shall use the demises [sic] premises only for the purpose of conducting therein a retail food market (including the merchandising of such miscellaneous goods, wares and merchandise as are commonly sold in retail food markets and are incidental to the principal business of conducting a retail food market). Lessor covenants and agrees that during the term thereof Lessee shall have the exclusive right to operate a retail food market upon the premises referred to herein

and that no portion of the entire premises covered by the plans and specifications shall be leased or subleased to any other person for that purpose * * *''.

After execution of the leases and after the completion of the leased premises, both lessees, Matteucci and Buttrey, went into possession. They thereafter operated their respective businesses side by side within such store building, with an interior entrance way between the two stores, until the latter part of the year 1966.

All parties admit, among other things, that under its lease agreement of May 5, 1956 with Hustad, Matteucci was required to pay to Hustad the rental stipulated in paragraph 4 of the lease agreement, which includes both a fixed rental and a percentage rental. Hustad admits receipt of rents to February 1970. As of March 1, 1970, Matteucci terminated its lease with Hustad, vacated the premises, and has since paid no rent. As of September 18, 1970, Hustad, in turn, terminated the lease with Matteucci. The premises are now occupied by Capital Sporting Goods & Western Wear.

About 1960, after several years of operation, Buttrey decided that in order to maintain its competitive position it would have to have larger premises than the premises which it occupied pursuant to its lease agreement of April 25, 1956 with Hustad. It appearing that the leased premises could not be enlarged because of physical and legal obstacles, Buttrey commenced a search for premises which would be large enough and adequate to house the operation of its store.

Hustad owned some, but not all, of the lots in Blocks 20 and 21 of the Lockey Addition, bounded on the north by Boulder Avenue, on the east by Montana Avenue, on the south by the alley in Block 20, and on the west by Dakota Street. The property was bisected by Davis Street between Blocks 20 and 21. Hustad indicated a willingness to construct a suitable store building for Buttrey, provided it could acquire title to all of the lots within the above described boundaries; and, that it could successfully petition the City of Helena, Montana, for closure of a portion of Davis Street and the alley in Block 20, and for rezoning the

property from residential to commercial purposes. Hustad embarked upon this program and, after acquiring the land, was successful in its rezoning application. This took several years and included litigation which was finally terminated by the decision of this Court in Olson v. City Comm. of City of Helena, 146 Mont. 386, 407 P.2d 374 (1965). Thereafter Hustad commenced construction of a new building on the property rezoned for commercial uses and purposes, and it offered to lease the building to Buttrey. Buttrey agreed.

No objection on the part of Matteucci to the construction of the new store building were communicated to Buttrey, or Hustad, or either of them, in any manner whatsoever prior to or during the course of construction of the store building. It was completed sometime in September 1966. Matteucci at all times knew Buttrey was going to move to the new premises.

On October 1, 1966, Buttrey and Hustad entered into a lease agreement covering the newly constructed building. Paragraph 3 of the Buttrey-Hustad lease agreement of October 1, 1966, provided in part:

"3. *Lessor's Title; Zoning; Subordination.* Lessor covenants that it has lawful title to the real estate described in Ehibit A and full right to make this Lease and that, within thirty (30) days afer receipt of Lessee's written request, Lessor will provide Lessee with current evidence satisfactory to Lessee of the status of Lessor's title to such real estate. Lessor further covenants that, at the commencement of the term, said real estate will be free from encumbrances excepting those agreed to in writing by Lessee and that there will be no zoning or other ordinances, or title or other matters, except those agreed to in writing by Lessee, which will restrict Lessee's operation of a general mercantile business on the leased premises including (a) The sale of alcoholic beverages if not prohibited by law; (b) The sale of any and all items of merchandise which under any law, rule, regulation or order must be sold by or in the presence of a registered pharmacist, provided, in each instance Lessee obtains all necessary licenses and permits at Lessee's expense; (c) The use of

the common areas designated on the Plot Plan hereunto annexed as Exhibit B.

"So long as Lessee is not in default, Lessee shall have quiet and peaceable possession of the leased premises and enjoy all of the rights herein granted."

Paragraph 13 of the Buttrey-Hustad lease of October 1, 1966, provided:

"13. *Assignment and Sub-letting.* Lessee shall not assign this Lease nor sublet the leased premises without Lessor's written consent, which shall not be unreasonably withheld, except that Lessee may, without Lessor's consent, assign this lease or sublet the leased premises to any affiliated or successor company (including without limitation, consolidations and mergers) or sublet portions of the leased premises to subtenants."

Buttrey sublet a portion of the premises demised to it to Osco, as a subtenant under a lease agreement dated January 29, 1967. Osco, in turn, sublet a portion of the premises demised to it by Buttrey to Osco Northwest, as a subtenant, under a lease dated March 29, 1968. Hustad had no knowledge of the subleases.

On or about January 29, 1967, Osco commenced operation of a drugstore under the terms of its sublease with Buttrey. On or about March 29, 1968, Osco Northwest commenced operation of a pharmacy, under the terms of its sublease with Osco. As of this date, both Osco and Osco Northwest are in possession of and occupy the premises demised to them under their respective subleases of January 29, 1967 and March 29, 1968.

Neither Buttrey nor Hustad have represented to Matteucci by means of any provision in any contract, lease agreement, writing or otherwise, that Buttrey would occupy the premises demised to it under the Buttrey-Hustad lease of 1956, for any period of time whatsoever, or at all.

This action was commenced on July 26, 1967, and an amended complaint was filed December 18, 1967. Pleadings were filed by all parties, including intervenors Osco and Osco Northwest. Interrogatories were submitted and answered, requests for admissions were filed, agreed facts submitted, and depositions were

taken. Matteucci admitted that the new premises occupied by Buttrey under its lease dated October 1, 1966 and referred to in the amended complaint as ''added land'', was not included within the premises described in its lease dated May 5, 1956. In Matteucci's answers to interrogatories of defendant Hustad, dated July 29, 1969, the following appears:

''16. Was all or any part of the 'added land' referred to in Paragraph V of the Amended Complaint included within the premises described in the Lease dated May 5, 1956?

''ANSWER: No.''

As to the propriety of summary judgment in this case, Rule 56(c), M.R.Civ.P., provides the standard for determining if summary judgment should be granted:

'' * * * The judgment sought shall be rendered forthwish if the pleadings, depositions, answers to interrogatories, and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law * * *''

A concise statement of the controlling principle under this rule is found in 3 Barron and Holtzoff—Federal Practice & Procedure, § 1234, p. 122:

''The question to be decided on a motion for summary judgment is whether there is a genuine issue of fact and not how that issue should be determined. The hearing on the motion is not a trial * * *.''

The district court had before it all of the facts pertinent to determining Matteucci's claim that the lease dated May 5, 1956, and specifically paragraph 6 of the exclusive clause, had been violated. Since this is a written contract, the district court must have considered the lease. If the court concluded that the language of the lease was not clear or ambiguous, evidence was before it as to the intent of the parties on the date the contract was executed. At the time the district court considered the motions for summary judgment the Hustad-Matteucci lease dated May 5, 1956, with the plot plan and plans and specifications attached thereto and initialed in accordance with paragraph 1 of

the lease, had been received in evidence, *without objection,* as defendants' Exhibit No. 1. Paul Matteucci admits he signed the lease and initialed the plot plan and specifications, as president of Matteucci. The lease dated May 5, 1956, did not include any land in Blocks 20 and 21 of the Lockey Addition to the City of Helena, which premises are presently leased to Buttrey and which are designated in the amended complaint as "added land".

On May 5, 1956, Hustad did not own all of the property in Blocks 20 and 21 described in the Buttrey lease of October 1, 1966. The agreed facts show that it was necessary for Hustad to purchase portions of said blocks, to obtain the permission of the City of Helena to close a portion of Davis Street and to rezone the premises. Matteucci had knowledge as early as 1961 that Buttrey intended to move. Matteucci admits neither Hustad nor Buttrey contracted with Matteucci at any time that Buttrey would remain at the original location during the entire period of Matteucci's lease. Matteucci further admits that Buttrey had the right to move whenever it wished.

It is agreed by all parties, including Matteucci, that the principal issue in this case is: "Did the exclusive clause contained in the Matteucci-Hustad lease extend beyond the geographic limits referred to in said lease?" Matteucci prefers to ask the question: "Can an exclusive have extra territorial validity?" What other facts, which Matteucci contends it did not have the opportunity to present to the court, are necessary to a determination of this question? The answer is "none".

As to the second issue which is partially woven in above, this action is to determine the rights of two parties under the terms of a written agreement executed some fifteen years ago. Heretofore we have set forth the provisions involved. The intent of the parties at the time was reduced to writing and expressed in clear and explicit language. For contract interpretation, see sections 13-702, 13-704, and 13-705, R.C.M.1947.

Paragraph 6 of the 1956 Matteucci-Hustad lease is clear, unambiguous and needs no interpretation. The area to which the exclusive covenant applies is "the entire premises covered by

the plans and specifications". The plans, specifications and plot plan were all a part of the lease and initialed by the parties. The plot plan clearly shows the property lines. The restrictive covenant was confined in its geographic limits to Block 24.

If this were not enough, the intent of the parties as to the extent of the geographic limits at the time the lease was executed is shown by other provisions of the lease; paragraph 1 with reference to the parking area and actions of the parties concerning it, states:

"Said parking area shall not be reduced from the size shown on said plans and specifications without the written consent of lessee."

After May 5, 1956, other persons indicated a desire to open businesses in close proximity to Matteucci and Buttrey stores. To house those businesses it was necessary to construct another building on what had been designated "parking area" in the Matteucci lease. Matteucci consented to using the parking area for this purpose. It is admitted by Matteucci that after this occurred, Hustad's financing agency demanded that additional land be obtained to maintain the ratio of parking to floor area. This additional land was the area across National Avenue. This is further indication of the intent of the parties that the geographic area covered by the exclusive covenant was confined to the area covered by the plot plan.

Matteucci, plaintiff, strenuously urges that the exclusive clause should be given "extraterritorial" effect. To this end Matteucci urges that there remains genuine dispute as to material issues of fact. But, if the lease is ruled to mean what it clearly says, there are no material facts in dispute.

Plaintiff states the "overwhelming weight of authority" in the United States is to the effect that in a "shopping center" with exclusive rights, extraterritorial effects of a lease are recognized. In our examination and study of the cases cited, we find that even in the most liberal cases courts will not extend the terms of a restrictive covenant when the language of the lease is plain, nor will courts rewrite the contract terms for the parties.

Plaintiff relies on Parker v. Lewis Grocer Company, 246 Miss. 873, 153 So.2d 261 (1963); Carter v. Adler, 138 Cal.App.2d 63, 291 P.2d 111 (1955); Daitch Crystal Dairies, Inc. v. Neisloss, 8 N.Y.2d 723, 201 N.Y.S.2d 101, 167 N.E.2d 643 (1960); Tabet v. Sprouse-Reitz Co., 75 N.M. 645, 409 P.2d 497 (1966); Slice v. Carozza Properties, Inc., 215 Md. 357, 137 A.2d 687 (1958); Cragmere Holding Corp. v. Socony-Mobile Oil Co., Inc., 65 N.J. Super. 322, 167 A.2d 825 (1961); Shaft v. Carey, 107 Wis. 273, 83 N.W. 288 (1900); Belvedere Hotel Co. v. Williams, 137 Md. 665, 113 A. 335 (1921); and Topol v. Smoleroff Development Corp. 264 App.Div. 164, 34 N.Y.S.2d 653 (1942), as typical of what it terms the general trend of cases in the United States. See also 90 A.L.R. 1446; 97 A.L.R.2d 1; 25 A.L.R.3d 897.

The briefs of both parties meticulously analyze the holdings, describing them variously as ''on all fours'', ''factually identical'', ''leading case'', or, on the other hand, ''easily distinguishable'', ''not in point'', and ''not controlling''.

In our analyses of the cases, the provisions of the contracts and the intent of the parties governed in each situation. Where the terms of the contract were clear and unambiguous and the intent of the parties clearly expressed, courts have construed them according to their express terms, as we do here.

Respondents cite Crest Commercial, Inc. v. Union-Hall, Inc., 104 Ill.App.2d 110, 243 N.E.2d 652 (1968); Nevada Food King, Inc. v. Reno Press Brick Company, 81 Nev. 135, 400 P.2d 140 (1965); and Great Atlantic and Pacific Tea Company v. Bailey, 421 Pa. 540, 220 A.2d 1 (1966). These cases are consistent with our holding here.

This is a simple case of contract. The terms are explicit and clear. The intent of the parties at the time of the contract is clear. We do not need an extended discussion to attempt to make ''certain modifications of older rules of law and equity so as to apply them with reason and fairness to the new relationships created'' by so called modern shopping centers, as the appellant seeks.

Having decided the issue depositive of the matter, we affirm the judgment.

MR. CHIEF JUSTICE JAMES T. HARRISON, MR. JUSTICES HASWELL and DALY, and the HONORABLE THOMAS DIGNAN, District Judge, sitting for MR. JUSTICE JOHN CONWAY HARRISON, concur.