GEORGE M. DANKE COMPANY, Appellant, vs. MARTEN and wife, Respondents.

*January 13—March 8, 1932.*

For the appellant there was a brief by *Barber, Keefe, Patri & Horwitz* of Oshkosh, and oral argument by *Frank B. Keefe.*

For the respondents there was a brief by *Martin & Martin* of Green Bay, attorneys for Alma G. Marten, and *D. K. Allen* of Oshkosh, attorney for Charles F. Marten, and oral argument by *Mr. Allen* and *Mr. Joseph Martin.*

WICKHEM, J. The plaintiff company is a corporation engaged in the manufacture, sale, and distribution of dairy products. Its principal milk plant is located in the city of Neenah. For a number of years the defendant Charles F. Marten operated a cheese factory in the town of Vinland, Winnebago county, known as the Maple Leaf factory. At the time of the contract which gave rise to this litigation he had built up a large business and had ninety patrons who were delivering milk to his factory. He engaged in the manufacture of cheese and butter, sold sweet cream and

skimmed milk. During all this time he was assisted by his wife, the defendant Alma G. Marten.

On August 31, 1929, the defendant Charles F. Marten conveyed to the plaintiff all of the real and personal property constituting the physical plant of the Maple Leaf factory. At the same time the plaintiff and defendant entered into the following written contract:

"Neenah, Wisconsin, August 31, 1929.

"In consideration of the payment to me by the George M. Danke Company of Neenah, Wisconsin, of the sum of eighteen thousand dollars ($18,000) according to an agreement heretofore made between us, I hereby covenant and agree with the George M. Danke Company, its successors or assigns, not to engage as owner, proprietor, manager, partner, or a stockholder, directly or indirectly, in the business of operating a cheese factory within the territory naturally tributary to the Maple Leaf cheese factory located on section one (1), town of Vinland, Winnebago county, Wisconsin, heretofore owned and operated by me.

"Witness my hand and seal at Neenah, Wisconsin, this 31st day of August, A. D. 1929.

"CHARLES F. MARTEN. (Seal)

"In presence of D. K. Allen, Edward J. Dempsey."

It is conceded that the defendant, at the time of executing this contract, declined to enter into any agreement which would disable him from engaging in the dairy business in the territory covered by the contract. Plaintiff went into possession of the Maple Leaf factory on September 1, 1929. Within a short time thereafter the defendant Alma G. Marten leased a recently vacated cheese factory, about a mile and a quarter from the Maple Leaf factory, and began the operation of a creamery. In December, 1929, the defendant Charles F. Marten (according to the contention of the plaintiff) and his wife (according to Marten's contention) purchased machinery and equipment for making cheese, and shortly after the beginning of the year 1930 began to manufacture cheese. It is an established fact that

cheese has ever since been manufactured in this plant. These activities are claimed to constitute a violation of the agreement heretofore set out, and to entitle plaintiff to relief by injunction.

About one month after the purchase of the Maple Leaf factory plaintiff ceased to manufacture cheese, and maintained the factory for the purpose of skimming milk, making casein, and transporting cream to their Neenah plant for manufacture or conversion into dairy products.

The case was tried before the court. Findings of fact and conclusions of law were filed, and judgment ordered for the defendant, dismissing the plaintiff's complaint. From the written opinion filed by the trial court it appears that the basis for this disposition of the case was the fact that prior to any cheese-making on the part of the defendant or his wife, the plaintiff company had abandoned its operations as a manufacturer of cheese. It was the conclusion of the trial court that the contract was for the purpose of protecting plaintiff's activities as a cheese-maker in the Maple Leaf factory, and that by its abandonment of these activities plaintiff lost any interest which it was entitled to protect by injunction.

The rule governing the validity of contracts in restraint of trade is set forth in *Berlin Machine Works v. Perry,* 71 Wis. 495, 38 N. W. 82; *Richards v. American Desk & S. Co.* 87 Wis. 503, 58 N. W. 787; *Palmer v. Toms,* 96 Wis. 367, 71 N. W. 654; *Durbrow Comm. Co. v. Donner,* 201 Wis. 175, 229 N. W. 635. In the *Palmer Case, supra,* it is said:

"The general rule that contracts in restraint of trade are void has its exceptions, one of which is that, for the protection of the good-will of an established business, the owner of the same may make a sale thereof with such business, and, as an inducement to the purchaser to buy, part with his liberty to engage in the same business for such limited time and within such limited territory as may be reasonably nec-

essary to protect the purchaser in the enjoyment of such business."

Since such contracts have no validity except as they are reasonably necessary to protect the vendee in the enjoyment of his business, it follows that the vendee's right to enforce the contract ends with his abandonment or transfer of the business. *Palmer v. Toms, supra.* All of the cases heretofore cited relate to that type of restrictive agreement which accompanies the sale of a business, together with its goodwill. In this case Marten did not sell his business. He merely sold the physical plant and accompanied this sale with an agreement not to engage in the cheese business in territory tributary to the premises sold. The fact that this restrictive agreement was ancillary to a sale of property rather than to a sale of a business does not affect its validity if it is otherwise valid. *Shaft v. Carey,* 107 Wis. 273, 83 N. W. 288. In 3 Williston on Contracts, § 1642, it is said:

"The seller or lessor of property as distinguished from a business or good-will may by a restrictive promise reasonably limited agree to refrain from himself engaging in a business or from disposing of his property in such a way that others can engage in a business which would impair the value of the property to the buyer for the purpose for which he intended to use it. . . ."

While the restrictive agreement may validly be made extensive enough to protect the vendee or lessee in the use or enjoyment of the property for the purpose for which he intended to use it, it obviously may be made less extensive than the permissible maximum. Hence, the question in this case is, What interest of plaintiff was it the design of the contract to protect? This is a question of fact. It is conceded that the defendant Marten declined, unless he was paid $2,000 in addition to what plaintiff proposed to pay, to enter into any agreement that would protect plaintiff from his competition, as a buyer of milk or a manufacturer of

dairy products other than cheese. This would tend to repel any inference that the contract was designed to protect plaintiff either from competition for raw milk or from activities on the part of the defendant that would tend to impair the value of the property for general dairy purposes. It is contended by the plaintiff that the design of the contract was to eliminate defendant as a cheese-maker in order to protect all of the plaintiff's dairy activities in the Maple Leaf factory. Plaintiff's claim in this respect is based on the fact that competition between cheese-makers is largely for raw milk, for the reason that a cheese-maker is in fact selling his services and consequently his income varies with the volume of his manufacture; that defendant, because of his reputation in the community as a cheese-maker, would offer especially destructive competition for raw milk so long as he continued to make cheese; that aside from the defendant's reputation and standing as a cheese manufacturer, the farmers prefer to sell to a cheese factory, and so long as defendant was permitted to make cheese he would have an advantage over plaintiff if plaintiff desired to obtain raw milk for other dairy purposes. It must be conceded that if this were the design of the contract, the abandonment of cheese manufacture by plaintiff would not terminate the interest which it was entitled to have protected.

The record furnishes no basis for the conclusion that these contentions are valid, nor are any of them within the scope of judicial notice. Upon the record as it stands, the conclusion of the trial court that the restriction was for the purpose of protecting plaintiff's business as a manufacturer of cheese is sustainable. An examination of the record, however, indicates that the question of fact as to the objective of the contract, upon which the trial court disposed of this case, was not raised by the pleadings, and an examination of the evidence convinces us that there was no attempt on the part of counsel on either side to establish

an answer to the question. Only two questions of fact were litigated on the trial: first, did Charles F. Marten actually engage in the cheese business subsequent to his agreement with plaintiff; and second, if he did, was the place where he was engaged in manufacturing "within the territory naturally tributary to the Maple Leaf factory?" It does not appear that any question of law or fact with respect to the objective or scope of the restrictive agreement, other than those indicated above, was in the minds of counsel or litigated at the trial. After the case was submitted to the court and taken under advisement, the question upon which the case was decided occurred to the court, and briefs were asked for upon the question.

Under these circumstances we are satisfied that this issue has not been tried. The issue cannot be resolved by an examination of the contract alone. A consideration of the circumstances under which it was executed, facts and customs relating to the business involved, and the practical construction of the contract by the parties is necessary in order to ascertain the interest intended to be protected. In view of the fact that this issue was not considered by counsel to be involved in the case, the record does not furnish the material for its proper disposition.

For this reason there must be a new trial.

*By the Court.*—Judgment reversed, and cause remanded with directions to grant a new trial.