**Olen E. GIBSON, Plaintiff–Appellant,**

v.

**Virgil D. EBERLE, Defendant–Appellee.**

**No. 86CA1073.**

Colorado Court of Appeals,
Div. IV.

Sept. 15, 1988.

Warberg & Associates, P.C., Sonja E. Warberg, D. Chet Mast, Fort Collins, for plaintiff-appellant.

Wood, Herzog, Osborn & Bloom, P.C., Charles S. Bloom, Fort Collins, for defendant-appellee.

HUME, Judge.

Plaintiff, Olen Gibson, appeals the judgment dismissing his claims seeking injunc-

tive relief and damages against defendant, Virgil Eberle, for the latter's alleged violation of a non-competition covenant. We affirm.

In 1968, Gibson and Eberle started a business selling industrial supplies to customers in northern Colorado, southern Wyoming, and eastern Nebraska. They first formed a corporation, Industrial and Contractors Supply Company, Inc. (ICS), to operate that business. Later, they formed a partnership to acquire and own a building and land in Fort Collins, from which to run the business. They operated ICS for nearly 10 years from that location.

In September 1978, the parties decided to end their business relationship, and entered into a written contract which memorialized their termination agreement. Under that contract, Eberle, in exchange for valuable consideration, conveyed all of his shares in ICS and all of his partnership interest to Gibson. Eberle also covenanted not to compete with ICS or with its purchaser for a period of ten years. Subsequently, Gibson continued to operate the industrial supply business from its Fort Collins location for almost four years.

In 1982, Gibson closed ICS, sold all of its inventory, liquidated its assets, leased the land and store site for other purposes, and took employment as an industrial supply salesman for Garrett Industries. He neither owned nor operated Garrett Industries, but was only a sales employee who received a base salary plus a commission on sales that exceeded his quota. In 1983, Gibson left his employment with Garrett Industries and was hired as a territorial sales manager for Suppliers to Industry, where once again, he was a non-owner employee who received a base salary plus commission.

In March 1984, almost two years after Gibson ceased to own or operate his own industrial supply business, Eberle opened an industrial supply store in Fort Collins, prompting Gibson to bring this action against Eberle for breach of his covenant not to compete, seeking injunctive relief and damages.

The 1978 covenant, contained within the parties' purchase and sale agreement, reads:

"Seller [Eberle] shall also be bound by a covenant not to compete with Purchaser [Gibson] or the corporation [ICS] * *by owning and operating an industrial supply house or hardware store* within a radius of 125 miles from the present location of said business in Fort Collins, Colorado ... for a period of ten years."

The emphasized portion of the covenant, following the asterisk, was added by the parties as an approved change when the agreement was executed.

At the end of plaintiff's case, the court dismissed his claims, finding that, although Eberle was competing with Gibson's career as a salesman and with the business of Gibson's employers, he was not competing with the industrial supply business he had conveyed to Gibson, since that business had ceased to exist. The court reasoned that because the subject matter of the covenant not to compete had ceased to exist, Gibson's right to enforce that covenant also ceased to exist.

■ Gibson first contends that because he continued to sell the same products to the same customers after liquidating ICS, the trial court erred in finding that the business conveyed to him ceased to exist. We disagree.

The subject matter of the parties' agreement was an established industrial supply business located in Fort Collins. Eberle agreed to convey his interest in that business to Gibson and promised not to compete by owning and operating a similar business.

Here, the record supports the findings of the trial court that Gibson did not simply change the form, name, or manner of his operating the business; rather, he liquidated it, sold its assets and inventory, and leased its location to others for a different purpose. In addition, Gibson's intention to abandon any value he had in the business is evidenced by his failure to sell the business as a going concern and to assign its good will. *Cf. Cantrell v. Lemons*, 119 Colo. 107, 200 P.2d 911 (1948) (an assignee may

enforce a covenant not to compete). Thus, we conclude that there is ample evidence in the record to support the trial court's finding of cessation of the business. *Page v. Clark*, 197 Colo. 306, 592 P.2d 792 (1979).

Gibson next contends that since the covenant not to compete unambiguously states that Eberle was not to compete either with ICS or its purchaser, the court erred in determining that his right to enforce the agreement was extinguished when the business ceased to exist. We disagree, and conclude that if the covenant is construed to permit the purchaser to enforce it after the business has been terminated or abandoned, it constitutes a void and unenforceable restraint of trade.

Contracts which restrict one in the exercise of a trade or profession are viewed with disfavor if their effect is unreasonably to interfere with the covenantor's right of free exercise of his liberty of occupation and employment. *See* 14 S. Williston, *Contracts* § 1636 (W. Jaeger 3d ed. 1972). Following this principle, Colorado courts have enforced reasonable covenants not to compete which are ancillary to the sale of an established business. *See Cantrell v. Lemons, supra; Barrows v. McMurtry Manufacturing Co.*, 54 Colo. 432, 131 P. 430 (1913); *cf.* § 8–2–113(2)(a), C.R.S. (1986 Repl.Vol. 3B).

The purpose of enforcing covenants ancillary to the sale of a business is to make the good will of the business conveyed "a saleable asset by protecting the buyer in the enjoyment of that for which he pays." 6A A. Corbin, *Contracts* § 1387 (1962). The test to determine the reasonableness of such contracts is whether the restraint provides a fair protection to the interests of the purchasing party in reasonably protecting that which he bought. *See Barrows v. McMurtry Manufacturing Co., supra.* Thus, it follows that an ancillary covenantee's right to enforce such a covenant ends with the termination or abandonment of the business to which the covenant was ancillary. *See Marcus v. Baker*, 221 S.W. 2d 575 (Tex.Civ.App.1949); *George M. Danke Co. v. Marten*, 207 Wis. 290, 241 N.W. 359 (1932); 6A A. Corbin, *Contracts* § 1387 (1962).

Here, Eberle's covenant was ancillary to Gibson's purchase of the established industrial supply business, and is reasonable to the extent necessary to afford protection to that business and its attendant good will. When the business was liquidated and its good will abandoned, the purpose for the continuation of the covenant's existence was extinguished. Thereafter, enforcement of the covenant became unreasonable as an unnecessary restraint of trade.

Moreover, here, this policy is reflected by the parties' use of the word *"Purchaser"* in defining the covenant's beneficiaries. The protection contemplated for Gibson was only ancillary to his purchase of the business interest which the covenant was designed to protect.

We thus conclude that the court did not err in dismissing plaintiff's claims.

This appeal was neither frivolous nor groundless, and accordingly, we deny Eberle's request for an award of appellate attorney fees. *See Jorgensen Realty, Inc. v. Box*, 701 P.2d 1256 (Colo.App.1985).

JUDGMENT AFFIRMED.

BABCOCK and NEY, JJ., concur.