# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-CA-01554-SCT

*HERRING GAS COMPANY, INC.*

*v.*

*PINE BELT GAS, INC., LLOYD BROOM, JASON STRINGER, STEVEN STRINGER AND JIMMY RUTLAND*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/20/2007 |
| TRIAL JUDGE: | HON. JOHNNY LEE WILLIAMS |
| COURT FROM WHICH APPEALED: | MARION COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | PAUL H. KIMBLE |
| | JOHN L. MAXEY, II |
| | HEATHER M. ABY |
| ATTORNEYS FOR APPELLEES: | DAVID M. OTT |
| | KRIS A. POWELL |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 02/12/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, CHIEF JUSTICE, FOR THE COURT:**

¶1.    Herring Gas Company, Inc., appeals the chancellor's decision in favor of Pine Belt Gas and Jimmy Rutland, a former Herring Gas employee, in Herring Gas' suit seeking to enforce a covenant not to compete.  Finding no error, we affirm.

## FACTS AND PROCEEDINGS

¶2.    Jimmy Rutland began employment with Broome LP Gas, LLC, on or about March 20, 2000. Incident to his employment with Broome Gas, Rutland signed an employment contract that was executed "by and between Broome LP Gas, LLC . . . and Jimmy L. Rutland . . . ."

¶3.    On April 19, 2006, Herring Gas purchased the assets of Broome Gas by entering into an asset-purchase agreement. Approximately five days after this sale, Rutland resigned from his position with Herring Gas and went to work for Pine Belt Gas. Twenty-four days after the execution of the asset-purchase agreement, Broome Gas executed a purported assignment to Herring Gas of Rutland's employment contract with Broome Gas, including his covenant not to compete.

¶4.    On May 17, 2006, Rutland received a letter from counsel representing Herring Gas stating that Rutland, by working for Pine Belt Gas and by selling propane gas within a seventy-five-mile radius of Purvis, Mississippi, was violating his noncompete agreement.

¶5.    Herring Gas filed suit against Rutland, Pine Belt Gas, and its principals on November 8, 2006, seeking preliminary and permanent injunctions restraining Rutland from calling on or soliciting Herring Gas customers, as well as compensatory damages. Herring Gas alleged that Rutland was in breach of the covenant not to compete that he entered into as part of his employment contract with Broome Gas, and that by virtue of Herring Gas' purchase of Broome Gas assets, the covenant had been assigned to Herring Gas. Herring Gas also alleged that, by virtue of its employment of Rutland, Pine Belt Gas had tortiously interfered with Herring Gas' contracts with its customers.

¶6.    A hearing on the motion for preliminary injunction filed by Herring Gas was held on November 28, 2006, during which both Herring Gas and Pine Belt Gas presented evidence

2

by way of testimony and documents. The motion was denied by the chancellor on December 4, 2006.

¶7. On August 23, 2007, upon certification by Herring Gas that it had no further evidence to present to the court in support of its claims, the chancellor entered a memorandum opinion and order finding in favor of Pine Belt Gas on all claims. The chancellor concluded that: (1) the noncompete clause was not enforceable against Rutland by Herring Gas; (2) even if the noncompete clause was enforceable by a subsequent purchaser, in this instance, Rutland's employment contract was not properly assigned to Herring Gas; (3) the asset-purchase agreement between Broome Gas and Herring Gas absolved Herring Gas of any responsibility to Broome Gas' employees; (4) the asset-purchase agreement clearly excluded all assets and liabilities not set forth in the agreement, and Rutland's employment contract was not included in the assets transferred; (5) the document purporting to be an assignment of Rutland's employment contract to Herring Gas failed for lack of consideration; and (6) Rutland's noncompete agreement terminated upon the closing of the sale, as Broome Gas was no longer in the gas distribution business and it would have been impossible for Rutland to compete with a company no longer in operation.

¶8. Aggrieved by the chancellor's order, Herring Gas appeals.

## STANDARD OF REVIEW

¶9. This Court "will not disturb the factual findings of a chancellor when supported by substantial evidence unless [we] can say with reasonable certainty that the chancellor abused his discretion, was manifestly wrong, clearly erroneous or applied an erroneous legal

3

standard." ***Biglane v. Under the Hill Corp***., 949 So. 2d 9, 13-14 (Miss. 2007) (quoting ***Cummings v. Benderman***, 681 So. 2d 97, 100 (Miss. 1996)).

## DISCUSSION

¶10.    Herring Gas raises three issues on appeal: (1) whether Jimmy Rutland breached a covenant not to compete; (2) whether Herring Gas and Broome Gas entered into a valid asset-purchase agreement; and (3) whether a covenant not to compete may be enforced by a subsequent purchaser.  We find the following issue to be dispositive: whether Herring Gas is entitled to enforce a non-compete agreement between an employee and its predecessor company.

**Whether Herring Gas is entitled to enforce a non-compete agreement between an employee and its predecessor company.**

¶11.    We find that the covenant not to compete contained within Rutland's employment contract with Broome Gas may not be enforced by Herring Gas against Pine Belt Gas for the following two reasons: (1) the plain language of the asset-purchase agreement precludes enforcement; and (2) the purported assignment of Rutland's employment contract after the sale of assets was of no effect because it occurred after Rutland's resignation.

   *A.    The plain language of the asset-purchase agreement precludes enforcement of the covenant not to compete.*

¶12.    As is customary with the sale of a business, the asset-purchase agreement entered into by Broome Gas and Herring Gas included a noncompete clause which acknowledged that Broome Gas would not compete with Herring Gas in the propane gas business for a specified period of time and within a specified geographical area.  Paragraph twelve of the agreement, which specifically addresses covenants not to compete, makes no reference to any covenants

4

not to compete between employees of Broome Gas and Broome Gas or Herring Gas. It appears that the sole reference to a covenant not to compete was between Broome Gas and Herring Gas.

¶13. The asset-purchase agreement explicitly lists the assets which are being transferred pursuant to the agreement.

¶14. It is the intention of the Sellers to sell Buyer all right, title and interest in and to all of the propane assets of Broome LP Gas, LLC, and Jones County Propane, LLC, which relate in any way to the sales of propane gas, *all company owned customer tanks and bulk storage tanks used in the business, including all related equipment, tools, supplies, repair parts, propane parts and appliance inventory held for resale, propane inventory, customer lists and files, route books, customer leases and other household interests and all accounts receivable.*

(Emphasis added). The asset-purchase agreement also clearly states that "*[t]his sale does not convey* any limited liability company interest in the Sellers nor *any assets* or liabilities of the Sellers' companies *not specifically set forth in the Agreement.*" (Emphasis added).

¶15. The asset-purchase agreement, while not referring to contracts between Broome Gas and its employees, including any covenants not to compete, does include a provision which gives Herring Gas the unilateral right to terminate Broome Gas employees after the sale, stating that the agreement "does not create any contract of employment or expectation of continued employment by entering into this Asset Purchase Agreement. [Herring Gas] reserves the complete right to make employment decisions after the closing of this sale with regard to all employees of [Broome Gas]."

¶16. The chancellor determined that "the asset purchase agreement clearly excluded all assets and liabilities not set forth in the agreement, and the employment contracts and non-

5

compete agreements of Broome employees were not included in those assets transferred pursuant to the asset purchase agreement."

¶17.    "The first rule of contract interpretation is to give effect to the intent of the parties"; however, the words utilized are "the best resources for ascertaining intent and assigning meaning with fairness and accuracy." *Farm Servs. v. Oktibbeha County Bd. of Supervisors*, 860 So. 2d 804, 807 (Miss. 2003) (quoting *Simmons v. Bank of Miss*., 593 So. 2d 40, 42 (Miss. 1992)). "[M]ere disagreement about the meaning of a contract clause does not make it ambiguous as a matter of law." *Gulfside Casino P'ship v. Miss. State Port Auth. at Gulfport*, 757 So. 2d 250, 257 (Miss. 2000) (quoting *Simmons*, 593 So. 2d at 42-43).

¶18.    We agree with the chancellor and find that, based on the plain, unambiguous language of the asset-purchase agreement, the employment contract containing the covenant not to compete was not transferred by the asset-purchase agreement.  Therefore, Herring Gas has no right to enforce the covenant not to compete.[1]

> *B.    The assignment of Rutland's employment contract was of no effect, as it did not occur until May 12, 2006, twenty-four days after the sale of assets and five days after Rutland resigned and began working for Pine Belt Gas.*

¶19.    Herring Gas argues that an addendum entered into between Herring Gas and Broome Gas twenty-four days after the original contract allows Herring Gas to enforce the noncompete agreement between Jimmy Rutland and Broome LP Gas.

---

[1] By hiring Rutland, Herring Gas caused Rutland to violate the very agreement it now seeks to enforce.

¶20.   The chancellor found that the purported assignment failed for lack of consideration[2] and "because it [was] dated [May 12, 2006,] twenty-four (24) days after the closing date of the asset purchase agreement wherein Broome transferred a significant portion of its assets and agreed to no longer operate a gas distribution system."  According to the chancellor, "Mr. Rutland's non-compete agreement with Broome terminated upon the closing of the sale, as Broome was no longer in the gas distribution business, and it is impossible for Mr. Rutland to compete with a company that is no longer in operation."

¶21.   Generally, the termination of an employer's business also terminates the restrictive employment covenant, because the abandonment or termination of the business extinguishes the covenant altogether.  *See Premiere Assocs., Ltd.v. Loper*, 778 N.E.2d 630, 637 (Ohio Ct. App. 2002) (quoting *Gibson v. Eberle*, 762 P. 2d 777, 779 (Colo. Ct. App. 1988)) (The right to enforce "a covenant ends with the termination or abandonment of the business to which the covenant was ancillary"); *Gibson,*762 P. 2d at 779 ("if the covenant is construed to permit the purchaser to enforce it after the business has been terminated or abandoned, it constitutes a void and unenforceable restraint of trade"); *Marcus v. Baker*, 221 S.W.2d 575,

---

[2]   According to Herring Gas, Rutland was not a party to the contract between Broome Gas and Herring Gas and thus does not have standing to claim lack of consideration for the assignment of his covenant not to compete.  We find that Herring Gas' argument that Rutland lacks standing to claim  lack of consideration for the assignment of his covenant not to compete is without merit.  In  *Ex parte Howell Engineering and Surveying, Inc*., the Alabama Supreme Court stated that "[w]hen a party to a contract that restrains employment is sued on that contract, the party sued has standing to challenge the validity of the contract."  *Ex parte Howell Eng'g & Surveying, Inc.*, 981 So. 2d 413, 419 (Ala. 2006).  Herring Gas filed suit against Rutland, alleging breach of the noncompete agreement; therefore, to deprive Rutland of the opportunity to contest the validity and enforceability of the contract upon which Herring Gas brings its action is nonsensical.

576 (Tex. Civ. App. 1949); *George M. Danke Co.v. Marten*, 241 N.W. 359, 361 (Wis. 1932) ("Since such contracts have no validity except as they are reasonably necessary to protect the vendee in the enjoyment of his business, it follows that the vendee's right to enforce the contract ends with his abandonment or transfer of the business.").

¶22.    We hold that the chancellor correctly concluded under the facts of this case that the termination of Broome Gas' business operations ended its right to enforce the covenant not to compete and that "[t]he attempted assignment by Broome twenty-four (24) days after the closing fails to breathe life into the dead contract."

## CONCLUSION

¶23.    Based on the plain language of the asset-purchase agreement as well as the ineffectiveness of the purported assignment, we hold that Herring Gas may not enforce the covenant not to compete contained within Rutland's employment contract. As the covenant not to compete is not enforceable by Herring Gas, we find that the issues of whether Rutland breached the covenant not to compete and whether a covenant not to compete may be enforced by a subsequent purchaser need not be addressed.

¶24.    **AFFIRMED.**

**CARLSON AND GRAVES, P.JJ., RANDOLPH, LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR. DICKINSON, J., CONCURS IN PART AND IN RESULT WITHOUT SEPARATE WRITTEN OPINION.**

8